851 F.Supp. 1506 (1994)
Wayne P. CARPER, et al., Plaintiffs,
v.
Gary W. DeLAND and Tamara Holden, Defendants.
No. 90-C-842 B.
United States District Court, D. Utah, Central Division.
May 6, 1994.
*1507 *1508 *1509 *1510 Brian M. Barnard, John Pace, UT Legal Clinic, Salt Lake City, UT, for plaintiffs.
Frank D. Mylar, Asst. Atty. Gen., Salt Lake City, UT, for defendants.

MEMORANDUM & ORDER
BOYCE, United States Magistrate Judge.
Plaintiff Wayne P. Carper, an inmate at the Utah State Prison (USP), filed suit against Gary W. DeLand, Executive Director of the Utah Department of Corrections (UDC), and Tamara Holden, the warden of the USP Southpoint facility, alleging that defendants do not provide inmates with constitutionally adequate access to the courts. Subsequently, counsel for plaintiffs filed an amended complaint adding Harvey Wayne Dorton, Andrew J. Conti, Jr., Donald R. Allen, William Babbel, and Julio Gary Valdez as plaintiffs. (Am.Compl., file entry 7.)
With the consent of the parties, the case was referred to the magistrate judge to conduct all proceedings and to order the entry of final judgment in accordance with 28 U.S.C. § 636(c). (Consent & order of reference, file entry 11.) During the course of the litigation, the court granted plaintiffs' request for a preliminary injunction requiring the contract attorneys to provide additional services to the named plaintiffs.[1] (Order, file entry 71.) Thereafter, pursuant to a motion by plaintiffs, the court ordered that the case be certified as a class action under Rule 23 of the Federal Rules of Civil Procedure. (Order, file entry 100.) The class includes all *1511 current and future inmates in the Utah prison system who seek to exercise certain legal rights. (Order Re: Notice to Plaintiff Class at 2-3, file entry 108.)
Plaintiffs request only declaratory and injunctive relief and have sued defendants in both their personal and official capacities. (Am.Compl. at 3, 7-8.) The case is presently before the court on cross-motions for summary judgment.

I. BACKGROUND
The UDC contracts with local attorneys to provide legal assistance to inmates in the Utah prison system. In July 1990, defendant DeLand issued a memorandum stating that effective July 17, 1990, the legal services contract would no longer allow the contract attorneys to provide general legal assistance in civil matters. After that date, only two types of legal services would be provided: (1) assistance in preparation and filing of petitions for writs of habeas corpus in either federal or Utah state court; and (2) assistance in the preparation and filing of pleadings in lawsuits "designed to test conditions of confinement" in either federal or Utah state court. (Mem., attached to Am.Compl. as ex. M.)
Plaintiffs contend that since they do not have access to a law library and are not allowed assistance from inmate "writ writers," the minimal legal assistance provided by the contract is insufficient to allow them meaningful access to the courts. Plaintiffs allege that they have been denied legal assistance in various types of matters deemed outside the scope of the contract. They argue that they have a constitutional right to legal assistance in these matters and seek an injunction requiring the defendants to provide it. In opposition, defendants contend that the current legal contract provides all the assistance to which plaintiffs are constitutionally entitled.

II. STANDARD FOR SUMMARY JUDGMENT
Summary judgment should be entered if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment bears the initial burden of informing the court of the basis of its motion. It may do so by identifying portions of the record that demonstrate that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
In response, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. at 2552. If the nonmoving party fails to meet this burden, summary judgment is mandated. Id. In such a case, no genuine issue of material fact exists because a complete failure of proof of an essential element of the party's claim necessarily renders all other facts immaterial. Id. at 322-23, 106 S.Ct. at 2552-53.

III. PLAINTIFFS' CLAIMS
In support of their motion for summary judgment, plaintiffs state that the named plaintiffs or members of the plaintiff class have sought and been denied assistance with the following types of claims:
(a) divorce actions  prosecuting or defending; instituting or defending enforcement or contempt proceedings; instituting or defending modification proceedings;
(b) prosecuting or defending personal injury matters; intentional and unintentional torts;
(c) civil rights actions under 42 U.S.C. § 1983 against defendants other than employees or agents of the UDC;
(d) workers' compensation claims;
(e) claims for breach of contract;
(f) petitions for writs of certiorari to the United States Supreme Court;
(g) securing case law and procedures regarding a pending civil rights case being handled pro se;
(h) a small claims court action;
(i) securing case law and procedures regarding a pending criminal appeal being handled pro se;
(j) defending crime-related property forfeiture actions;

*1512 (k) defending state tax assessments based upon illegal possession of controlled substances;
(l) adoptions  prosecuting or defending termination of parental rights;
(m) name changes;
(n) expungements;
(o) paternity actions  prosecuting or defending;
(p) real property disputes;
(q) probate matters;
(r) out-of-state litigation;
(s) Veterans' Administration matters: discharge upgrades, termination of benefits, suits regarding loan guaranties;
(t) defense of collection matters;
(u) prosecution of collection matters or for recovery of property; and,
(v) bankruptcies.
(Pls.' Statement Undisputed Facts Supp.Mot. Summ.J. at 6-8, file entry 64.)
In opposition to summary judgment, defendants assert that plaintiffs have raised for the first time in their motion for summary judgment an issue concerning whether the contract should provide for legal assistance in filing civil rights suits that are unrelated to an inmate's incarceration. Defendants state that this question is clearly outside the scope of the pleadings.
Plaintiffs' basic claim in this case is that the current UDC legal policy does not provide them with adequate assistance in civil matters. In their amended complaint, plaintiffs alleged that they had been denied assistance in filing civil rights suits arising out of events at a halfway house and in a county jail prior to their current incarceration. (Am. Compl. at 5, file entry 7.) The court believes that plaintiffs' claim that they are entitled to assistance in preparing and filing all civil rights cases, even those not arising out of their incarceration by the UDC, falls within the scope of the pleadings and will be addressed.
Defendants state that plaintiffs have failed to show that any member of the plaintiff class has a workers' compensation claim. Andrew J. Conti, one of the original named plaintiffs, alleged that he been denied assistance in preparing and filing a workers' compensation claim. (Conti aff., file entry 38.) However, defendants state that plaintiff Conti has no standing to pursue this claim because he was released on parole in February 1991. (Hinckley aff., file entry 61.) Since Conti has been released, this claim is mooted as to him. Plaintiff Babbel states that during his incarceration, he has sought assistance from private attorneys in pursuing a workers' compensation claim, but has been unable to find anyone willing to help him. (Babbel aff. of Sept. 7, 1991 ¶ 15, file entry 111.) It is unclear whether plaintiff Babbel presently has a claim for assistance in this area. However, this is the type of claim which is capable of repetition, yet evading review. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); Napier v. Gertrude, 542 F.2d 825 (10th Cir.1976), cert. denied, 429 U.S. 1049, 97 S.Ct. 759, 50 L.Ed.2d 765 (1977). Accordingly, the claim regarding assistance with workers' compensation claims is properly before the court and will be considered.
Defendants also state that plaintiffs have produced no evidence to show that anyone in the plaintiff class has any of the claims listed in paragraph 10(j-v) of plaintiffs' statement of undisputed facts in support of their motion for summary judgment. An examination of plaintiffs' affidavits and depositions indicates that no member of the plaintiff class has asserted a claim relating to defending forfeiture actions, defending state tax assessments based upon illegal possession of controlled substances, expungements, paternity actions, real property disputes, probate matters, Veterans' Administration matters, defense of collection matters, or bankruptcy. Although Mr. Freestone, a USP contract attorney, stated in his deposition that he has refused to assist inmates with some of these claims, Mr. Freestone's statement is insufficient to raise these claims on behalf of the plaintiff class. Since no member of the plaintiff class has asserted the above listed claims, the court will not address them.
The record indicates that members of the plaintiff class have asserted claims relating to adoptions, (Valdez aff., file entry 99), termination of parental rights, (Allen affs., file entries 35, 57; Vigil aff., file entry 186, Martinez *1513 aff., file entry 149), out-of-state litigation,[2] (Mangum aff., file entry 146; Jolivet aff., file entry 187), name changes, (Floyd aff., file entry 141), and prosecution of collection matters or for recovery of property, (Allen aff., file entry 85; Babbel dep. at 4-5). Therefore, the court will address these matters in addition to the claims to which defendants have raised no objection.

IV. PRISONERS' RIGHT OF ACCESS TO THE COURTS
It is well established that prisoners have a constitutional right of "adequate, effective, and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817, 821, 822, 97 S.Ct. 1491, 1494, 1495, 52 L.Ed.2d 72 (1977); Ramos v. Lamm, 639 F.2d 559, 583 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); Love v. Summit County, 776 F.2d 908, 911 (10th Cir.1985), cert. denied, 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 25 (1986). Moreover, it is equally well established that states have an affirmative obligation to assure all inmates such access. Bounds, 430 U.S. at 824, 97 S.Ct. at 1496; Ramos, 639 F.2d at 583; Love, 776 F.2d at 911. In evaluating the adequacy of prisoners' access to the courts, courts should keep in mind that "`meaningful access' is the touchstone of the constitutional guarantee." Ramos, 639 F.2d at 583.
In Bounds, the Supreme Court held that the fundamental right of access to the courts requires that prison officials assist inmates in the preparation and filing of meaningful legal papers by providing either an adequate law library or assistance from persons trained in the law. Bounds, 430 U.S. at 828, 97 S.Ct. at 1498. As previously noted, the UDC attempts to satisfy this obligation by providing assistance from contract attorneys through the preparation and filing of petitions for writs of habeas corpus and civil rights complaints relating to conditions of confinement. The issue in this case is whether the scope of the services provided is constitutionally adequate.

V. SCOPE OF THE RIGHT OF ACCESS

A. Supreme Court Precedent

More than fifty years ago, the Supreme Court ruled that prison officials may not impair prisoners' right of access to the courts for the purpose of filing petitions for writs of habeas corpus. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). See also Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The Court has since acknowledged that the right of access extends to civil rights cases. Wolff v. McDonnell, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974). In Wolff, the Court stated that "[t]he right of access to the courts ... is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." Id.
Defendants state that it is presently UDC policy to provide assistance in the preparation and filing of petitions for writs of habeas corpus and civil rights complaints relating to inmates' conditions of confinement. (1st DeLand aff. ¶ 12, file entry 45.) However, they contend that this obligation does not extend beyond the initial filing stage in habeas corpus and civil rights cases nor does it extend to other types of cases.
Defendants rely on Bounds to support their argument that the assistance provided to inmates is constitutionally adequate. However, Bounds does not delineate the scope of prison officials' obligation to provide assistance to inmates in gaining access to the courts. The Fifth Circuit has noted the problems in applying the Bounds principles:
[T]he principles stated in Bounds "suffer for lack of internal definition and prove far easier to state than to apply," perhaps because they have no clear textual footing in the Constitution. Bounds is vague about exactly what kinds of claims by inmates trigger the "right of access" to the courts, how long a person must be detained before the right is triggered, and what level of legal assistance is required to protect the right. *1514 Mann v. Smith, 796 F.2d 79, 84 (5th Cir. 1986) (quoting Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir.1985)) (citation omitted).
Defendants state that based on Bounds, "one can clearly state that prison officials are under no obligation to affirmatively assist an inmate in his or her ability to access the court, unless the claim involves a habeas corpus or civil rights matter." (Defs.' Mem. Supp.Summ.J. at 13 attached to Defs.' Mot. Summ.J., file entry 44.) In support of this contention, defendants state that the Court identified the real issue in Bounds as follows: "The inquiry is rather whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Id. at 12 (quoting Bounds, 430 U.S. at 825, 97 S.Ct. at 1496-97) (emphasis added by defendants). However, this quotation does not support defendants' contention that Bounds limits their obligation to providing assistance only in habeas corpus and civil rights cases involving conditions of confinement.
In making the statement, the court was not defining the kinds of rights that inmates' right of access to the courts was intended to protect. Instead, the court was focusing on whether law libraries or legal assistance were needed in order for inmates to have meaningful access to the courts. This is apparent from the context in which the statement was made.
The statement appears in the course of a discussion in which the Court rejected prison officials' argument that the constitutional duty to assure meaningful access to the court merely required states to allow inmate "writ writers" to function. The Court noted that its prior decisions had required prison officials to shoulder an affirmative obligation to assure all prisoners meaningful access to the courts including the provision of such items as paper, pens, stamps, and transcripts at state expense. Bounds, 430 U.S. at 823-25, 97 S.Ct. at 1495-97. The Court then stated that neither the availability of jailhouse lawyers nor the necessity of state expenditures was dispositive; rather, the inquiry was whether law libraries or legal assistance were necessary to give prisoners a reasonable opportunity to present their claims to the courts. Id. at 825, 97 S.Ct. at 1496-97.
After a lengthy discussion, the Court rejected the prison officials' argument that law libraries or other legal assistance for inmates were unnecessary. Id. at 825-28, 97 S.Ct. at 1496-98. Thus, when read in context, it is clear that the Court was addressing whether law libraries or other forms of legal assistance were needed in order for inmates to have an adequate opportunity to present their claims to the courts or whether they could reasonably exercise their right of access to the courts without them. The court concluded that law libraries or other forms of assistance must be provided. Thus, the statement quoted by defendants was not meant as a limitation on the scope of prisoners' right of access to the courts.
Furthermore, the quotation is not a precise statement of the issue in the case as defendants contend. The Court itself stated the issue as follows: "The issue in this case is whether States must protect the right of prisoners to access to the courts by providing them with law libraries or alternative sources of legal knowledge." Bounds, 430 U.S. at 817, 97 S.Ct. at 1492-93. It is significant that when the Court stated the issue, it did not use the phrase "fundamental constitutional rights" and made no reference to the kinds of matters with which prison officials were required to provide assistance.
Defendants also state that the Court in Bounds never questioned that prison officials' affirmative duty to aid inmates in their right of access to the courts is only triggered when the case involves habeas corpus or conditions of confinement. Defendants further argue that the Court clearly stated that it was only concerned with an inmate's ability to file a civil rights complaint or habeas corpus petition. (Defs.' Mem Supp.Summ.J. at 12.)
For this proposition, defendants apparently rely on the following statement by the Court: "By contrast in this case, we are concerned in large part with original actions seeking new trials, release from confinement, or vindication of fundamental civil rights." Bounds, 430 U.S. at 827, 97 S.Ct. at 1498. The Court made this statement in response *1515 to an argument by prison officials that in light of the Court's prior decision in Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), law libraries or other forms of legal assistance are unnecessary to assure prisoners meaningful access to the courts. The Ross Court had held that prisoners' right to adequately present their claims did not require appointment of counsel to file petitions seeking discretionary review in state court or in the Supreme Court.
In Bounds, the Court discussed the rationale of the Ross decision. The Court explained that a court considering a discretionary review petition is not primarily concerned with the correctness of the judgment below. Rather, the court will generally grant review only if the case raises issues of significant public interest, important jurisprudential considerations, or if it conflicts with controlling precedent. The Ross Court held that pro se prisoners could present their claims adequately on discretionary review because they already would have had counsel for their initial appeals as of right. They were thus likely to have appellate briefs already written on their behalf, trial transcripts, and intermediate appellate decisions for use in preparing their petitions. Bounds, 430 U.S. at 827, 97 S.Ct. at 1497-98.
Following this discussion, the Bounds Court stated that by contrast, it was concerned in large part with "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights." Id. In other words, unlike the Ross case where it was concerned with the necessity of appointed counsel for discretionary review, in Bounds the Court was concerned with the need for legal assistance primarily in original actions. This is apparent from the Court's next sentence in which it stated that rather than presenting claims that already had been passed on by two courts, the inmates in Bounds frequently raised previously unlitigated issues. Id. Thus, defendants' contention that the Court was only concerned with habeas corpus and civil rights cases is misleading. Although the Court in Bounds was primarily concerned with those types of cases based on the facts presented to it, and evidenced by its use of the phrase "in large part," the statement does not stand for the proposition that civil rights and habeas corpus cases are the only kinds of legal matters requiring assistance from prison authorities.
Finally, defendants contend that Bounds held that prison officials have an affirmative duty to provide either law libraries or other legal assistance only in the filing of civil rights complaints and petitions for writs of habeas corpus. (Defs.' Mem. Supp.Summ.J. at 12-13.) However, defendants distort the holding in Bounds which the Court stated as follows: "We hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828, 97 S.Ct. at 1498.
The holding does not limit the scope of prison authorities' obligation to providing assistance only in the preparation of civil rights complaints and petitions for writs of habeas corpus. Instead, the court used the term "meaningful legal papers" which surely includes more than complaints and petitions in civil rights and habeas corpus cases. Moreover, the Court did not qualify the term "meaningful legal papers" or limit its holding to certain types of cases. Accordingly, Bounds does not preclude plaintiffs' claims in this case.

B. Tenth Circuit Precedent

Defendants argue that the question before this court already has been decided by the Tenth Circuit in Nordgren v. Milliken, 762 F.2d 851 (10th Cir.1985), cert. denied, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). The plaintiffs in Nordgren were USP inmates who claimed, inter alia, that meaningful access to the courts entailed legal assistance at all stages of judicial proceedings, not just at the initial pleading stage, and legal assistance in all types of civil cases. See id. at 853.
Defendants rely on the following statement in Nordgren to support their contention that they must provide legal assistance only for civil rights and habeas corpus cases: "[W]e are persuaded that we should not hold that the right of access to the courts requires more than the assistance of counsel through *1516 completion of the complaint for a federal habeas or civil rights action." Id. at 855. However, the court in Nordgren did not expressly consider whether meaningful access to the courts requires legal assistance in civil matters other than habeas corpus and civil rights cases because the question was not presented by the facts of the case as evidenced by the following statement:
Plaintiffs also contend that a law library or legal assistance must be available to prison inmates for all types of civil cases. The argument seems to have no factual basis because in the contract with the Utah State Department of Social Services, Division of Corrections, the law firm agreed to provide "legal advice, consultation and assistance to inmates regarding the preparation and filing of initial pleadings" "in any civil matters (state or federal) other than those handled by the Salt Lake Legal Defender Association, including but not limited to civil rights actions, divorce, child custody, guardianship, and tort liability actions."
Id. at 855 n. 4 (citation omitted). Thus, the Nordgren court's unwillingness to hold that access to the courts requires more than assistance in the initial filing of civil rights complaints and petitions for habeas corpus is explained by the fact that the issue was not properly before the court.
Defendants also state that in Ward v. Kort, 762 F.2d 856 (10th Cir.1985), the Tenth Circuit held that state mental hospital officials need only provide patients with assistance of counsel through the completion of federal habeas petitions or civil rights complaints. (Defs.' Mem. Supp.Mot.Summ.J. at 15.) However, defendants misconstrue the court's holding in Ward.
Although the court found that the assistance provided pursuant to a contract was constitutionally deficient because the contract attorney did not draft pleadings in habeas corpus and civil rights cases, it did not hold that the drafting of such pleadings would satisfy the state's obligation to provide the inmates with access to the courts. In fact, the contract attorney in Ward actually provided numerous services in civil matters such as preparing wills, helping to draft contracts, pleadings, and other legal papers, providing legal research, and handling disputes between patients and the hospital. In addition, he assisted patients in contacting the public defender, legal services, or private counsel when appropriate. Id. at 857.
Regarding civil rights and habeas corpus cases, the contract attorney assisted patients in obtaining the necessary forms, helped in drafting the pleadings, and provided research and case material as requested. Id. However, because he did not actually prepare civil rights complaints and habeas corpus petitions, the court held that the legal services were constitutionally inadequate and remanded the case to the district court for further proceedings to develop a reasonable plan to assure the plaintiff access to the courts in accordance with constitutional guarantees. Id. at 860-61.
In Bee v. Utah State Prison, 823 F.2d 397 (10th Cir.1987), the court held that an illiterate prisoner was not entitled to legal assistance beyond the initial pleading stage in a civil rights case, reaffirming its holding in Nordgren. However, the court did not address the question whether prisoners are entitled to help in other civil matters.
In light of the foregoing, defendants' contention is inaccurate that Tenth Circuit precedent limits the scope of their obligation to assisting inmates only through the completion of petitions for writs of habeas corpus and civil rights complaints. Further, plaintiffs' position that prisoners are entitled to assistance in other civil matters is supported by Ramos v. Lamm in which the Tenth Circuit stated that the protection afforded legal mail applies equally to criminal and civil matters. Ramos, 639 F.2d at 582.

C. Decisions of Other Circuits

The Fifth Circuit has rejected the argument that prisoners' right of access to the courts is limited to the presentation of constitutional, civil rights, and habeas corpus claims, holding that the right extends to other civil matters. Jackson v. Procunier, 789 F.2d 307, 311 (5th Cir.1986). In Jackson, a prisoner alleged that he was deprived of his right of access to the courts by prison mail-room personnel who intentionally delayed his mail. The delay resulted in the dismissal of his appeal in a civil suit. In response, the *1517 defendant prison officials argued that there was no violation because a prisoner's right of access to the courts is limited to the presentation of habeas corpus and civil rights claims.
The court noted that although Bounds was primarily concerned with constitutional and civil rights claims, recognition of the right of access to the courts long precedes Bounds and has from its inception applied to civil as well as constitutional claims. The court observed that more than eighty years ago, the Supreme Court recognized the right of access in the context of a tort suit based on diversity jurisdiction:
The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship ... granted and protected by the federal constitution.
Id. (alteration in original) (quoting Chambers v. Baltimore & O.R.R., 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907)).
Defendants argue that the Fifth Circuit's position is more accurately represented by a statement in Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir.1985), in which the court stated that the right of access apparently does not extend to all legal filings, but applies only to constitutional claims such as civil rights complaints and habeas corpus petitions. However, the Jackson court later described that statement as dicta. The court stated that although Bounds did not discuss civil suits, neither Bounds not the dicta in Morrow undermines the previously recognized right of access to the courts in civil matters. Jackson, 789 F.2d at 311. See also Corpus v. Estelle, 551 F.2d 68, 70 (5th Cir. 1977) (stating that a prisoner's reasonable access to the courts "must include access in general civil legal matters including but not limited to divorce and small claims").
The Eleventh Circuit has likewise recognized that a prisoner's right of access to the courts applies to civil matters. Straub v. Monge, 815 F.2d 1467, 1470 (11th Cir.1987) (right to meaningful access applies to civil forfeiture proceeding against an inmate), cert. denied, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). See also Toussaint v. McCarthy, 926 F.2d 800, 809-10 (9th Cir. 1990) (Wiggins, J., dissenting) (stating that the reasoning in Bounds requires that prison officials provide legal assistance with all civil and criminal claims of a prisoner denied access to a law library), cert. denied, ___ U.S. ___, 112 S.Ct. 213, 116 L.Ed.2d 171 (1991).

D. Legitimate Penological Interests

The Supreme Court has stated that a prison regulation that infringes upon inmates' constitutional rights is valid so long as it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404-05, 96 L.Ed.2d 282 (1987). Defendants state that even if their present policy infringes on inmates' right of access to the courts, the policy is justified by legitimate penological interests. Defendants argue that the UDC budget cannot absorb the expense of additional obligations for legal assistance. They state that if the court grants the relief sought by plaintiffs, it will be at the expense of inmate jobs and educational and rehabilitative programs. According to defendants, inmates who are involved in such programs are better behaved. Defendants assert that reducing costs and improving inmate behavior are important penological goals and even go so far as to suggest that if these programs are cut, prison riots might result. (Defs.' Supplemental. Mem. Supp.Mot.Summ.J. 14-18, file entry 106.)
The UDC has an obligation to assure constitutionally adequate court access to all inmates. Ramos, 639 F.2d at 583. If defendants are correct that increased legal services will result in a decrease in educational and other programs, that is unfortunate. However, the court is unpersuaded by defendants' argument that budgetary considerations justify limiting the scope of their duty to the level provided under the current contract.
While it is true that economic factors may be considered in determining the method used to provide meaningful access to the courts, the cost of protecting the right of access cannot be used to justify its denial. Bounds, 430 U.S. at 825, 97 S.Ct. at 1496-97; *1518 Petrick v. Maynard, 11 F.3d 991, 995 (10th Cir.1993). See Harris v. Champion, 15 F.3d 1538, 1562-63 (10th Cir.1994); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 337 (3d Cir.1987), cert. denied, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988); Westbrook v. Zant, 704 F.2d 1487, 1496 (11th Cir.1983); Todaro v. Ward, 565 F.2d 48, 54 (2d Cir.1977) (stating that inadequate resources cannot justify the denial of constitutional rights).
In essence, defendants' argument is that educational and rehabilitative programs are more valuable to inmates than the constitutional right of access to the courts. However, courts have consistently held that inmates have no constitutional right to jobs, rehabilitation, or educational programs. Termunde v. Cook, 684 F.Supp. 255, 259 (D.Utah 1988). See Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976); Williams v. Meese, 926 F.2d 994, 998 (10th Cir.1991); Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir.1986); Battle v. Anderson, 564 F.2d 388, 403 (10th Cir.1977); Hoptowit v. Ray, 682 F.2d 1237, 1255 (9th Cir.1982); Fiallo v. de Batista, 666 F.2d 729, 730 (1st Cir.1981); Jones v. Grunewarld, 644 F.Supp. 256, 259 (S.D.N.Y.1986). Although providing such programs is a legitimate penological objective, defendants may not choose to provide them at the expense of a constitutional right. Furthermore, the decision whether to fund such programs is a question for the legislature, not for the court.

VI. DEFENDANTS' OBLIGATION TO PROVIDE ASSISTANCE

A. Civil Rights Cases

Under the present policy, defendants provide legal assistance in filing civil rights claims only if they relate to an inmate's conditions of confinement while in the custody of the UDC. (See 1st DeLand aff. ¶ 12, file entry 45; 2d DeLand aff. ¶ 3, file entry 107; legal contract effective 7/1/93 at 5, pl.'s ex. E, file entry 168; Freestone dep. at 13-14, 17-18, 47-48.) Defendants have provided no case law to support their contention that their obligation regarding civil rights complaints is restricted to cases involving conditions of confinement.
In Bounds, the Supreme Court stated that prison officials are obligated to assist prisoners in preparing meaningful legal papers by providing either adequate law libraries or assistance from persons trained in the law. Bounds, 430 U.S. at 828, 97 S.Ct. at 1498. There is nothing in Bounds to suggest that prison officials' obligation is limited to conditions of confinement cases. The court in Nordgren likewise did not indicate that prison officials' help should be limited to certain types of civil rights cases. See Nordgren, 762 F.2d 851. Accordingly, defendants are required to provide assistance through the initial pleading stage in all civil rights cases in both state and federal courts. Defendants' obligation includes the preparation of all papers necessary to get the inmate's case into court including petitions to proceed in forma pauperis and motions for appointment of counsel when appropriate.

B. Habeas Corpus Cases

Defendants state that it is their policy to provide assistance to Utah inmates in filing petitions in all habeas corpus cases including claims against the Board of Pardons. (2d Casper aff. ¶ 4, file entry 155.) Defendants admit that sometime in May 1991, they became aware that the contract attorneys were delaying assistance with habeas corpus petitions which sought relief based on the Utah Supreme Court's ruling in Foote v. Utah Bd. of Pardons, 808 P.2d 734 (Utah 1991). Apparently, the contract attorneys anticipated a great increase in the number of such claims as a result of Foote which they had not contemplated at the time they signed the contract. Further, the contract attorneys believed that the Foote decision was unclear; consequently, they declined to file claims based on Foote until the Utah Supreme Court clarified its position.[3] (2d Casper aff. *1519 ¶¶ 6-7; Notice to Inmates from contract attorneys attached as an ex. to 2d Dorton aff., file entry 112.)
Defendants state that they have since re-negotiated the legal contract to allow for additional compensation for the expected increase in cases as a result of Foote. The new contract specifically requires the contract attorneys to provide assistance in all petitions against the Board of Pardons. (2d Casper aff. ¶ 8.) Accordingly, the problem with habeas corpus petitions against the Board of Pardons has been resolved.
Several members of the plaintiff class have submitted affidavits stating that they have been denied assistance in pursuing habeas corpus claims. (Vigil aff., file entry 92; Auble aff., file entry 93; Bledsoe aff., file entry 94; Malek aff., file entry 95; Valdez aff., file entry 96; Thompson aff., file entry 101; Nielsen aff., file entry 102; Lawrence aff., file entry 103; Rawlings aff. file entry 104.) Generally, these affidavits do not provide sufficient facts for the court to determine whether these inmates were denied assistance that should have been provided under the contract. Some of the inmates state that they wished to pursue habeas corpus relief against persons other than UDC employees. If these inmates seek assistance in filing habeas corpus petitions in other states, the convicting state would be responsible for providing help as discussed below. Since defendants state that it is their policy to provide assistance in preparing habeas corpus petitions, the court will not grant injunctive relief on this issue at this time. If this problem persists, the court will consider it at a later date.

C. Federal Prisoners & Out-of-State Prisoners in UDC Custody; Utah Prisoners Housed in Other Jurisdictions

Plaintiffs allege that federal prisoners and out-of-state prisoners housed in the UDC system pursuant to an interstate compact have been refused assistance by the contract attorneys. Similarly, they state that Utah prisoners housed outside the state have been denied assistance. In response, defendants state that it is their policy to provide assistance to such prisoners.
When state prisoners are transferred to federal custody or to other states, the sending state retains responsibility for providing legal assistance to allow the prisoner meaningful access to home state courts. Rich v. Zitnay, 644 F.2d 41, 42-43 (1st Cir. 1981); Benjamin v. Potter, 635 F.Supp. 243, 244 (D.V.I.1986), aff'd, 838 F.2d 1205 (3d Cir.1988); Blake v. Berman, 625 F.Supp. 1523, 1525 (D.Mass.1986); Hudson v. Israel, 594 F.Supp. 664, 667-68 (E.D.Wis.1984); Brown v. Smith, 580 F.Supp. 1576, 1577-78 (M.D.Pa.1984). Thus, the UDC is responsible for providing legal assistance to prisoners convicted in Utah, but housed out of state, who need access to the Utah courts. Likewise, the transferring state is responsible for providing assistance to its prisoners housed in the Utah prison system when those prisoners seek access to the courts of their home states. However, where out-of-state or federal prisoners housed in Utah seek access to the Utah courts to address claims arising in Utah, the UDC must provide legal assistance. See Rich, 644 F.2d at 42.
Defendants state that it is UDC policy to provide assistance to all federal inmates housed at the USP in filing habeas corpus and civil rights suits to challenge the legality of their conviction, sentence, or conditions of confinement and that the UDC has contracted with private attorneys specifically to provide this assistance. (1st Casper aff. ¶ 4, file entry 144.) In addition, defendants state that it is their policy to assist inmates convicted in other states, but housed in Utah under an interstate compact, to file habeas corpus petitions and civil rights complaints which test the legality of their confinement in Utah. When such inmates have claims that must be filed in other jurisdictions, defendants state that a UDC correctional official contacts a contract attorney from the convicting state to assist the inmate in filing his complaint in that jurisdiction. (Id. ¶ 5.) Defendants have not described their policy for providing legal assistance to Utah inmates housed outside the state. However, the legal contract submitted by plaintiffs requires the contract attorneys to provide legal services to "inmates housed outside the state of Utah whose causes of action in the named categories of cases arose within the state of Utah." *1520 (Legal contract at 5, pls.' ex. E., file entry 168.)
The UDC policy properly recognizes that the Utah contract attorneys must assist Utah inmates housed elsewhere and out-of-state inmates housed in Utah with claims arising in the state. However, the scope of assistance provided is too narrow. As discussed above, defendants are required to provide assistance in all civil rights cases, not just those relating to conditions of confinement. Further, they are required to provide assistance in other matters consistent with this opinion.
Inmate David Jolivet has raised a factual dispute regarding whether the contract attorneys actually provide services consistent with their policy. Mr. Jolivet, a Canadian citizen, but convicted of crimes in Utah is presently housed at the federal penitentiary at Lompoc, California. Mr. Jolivet states that defendants have refused to provide him assistance with various legal matters. (Jolivet aff., file entry 187.)
Some of Mr. Jolivet's requests are outside the scope of assistance that the State of Utah must provide. However, some of his requests, such as his desire to file a petition for transfer to a Canadian prison which is in the nature of habeas corpus, his request to file a suit against the Board of Pardons, and his request to file a civil rights suit against UDC personnel appear to fall within the scope of assistance that the contract attorneys are required to provide under the current contract.
The court has previously extended preliminary injunctive relief to Mr. Jolivet. (2d Prelim.Inj., file entry 189.) Accordingly, the court assumes that Mr. Jolivet has been provided assistance consistent with the preliminary injunction. To the extent that Mr. Jolivet claims that the contract attorneys have refused to provide services required under the current contract, the court declines to grant permanent injunctive relief at this time. If this matter remains unresolved, the court will consider it at a later date.
Inmate Larry Bruce Mangum states that he is an Arizona inmate housed at UDC facilities pursuant to an interstate compact. He states that at the time of his transfer to Utah, he was in the process of preparing a challenge to his Arizona conviction. Mangum states that since his transfer, he does not have access to a law library or to Arizona law. He has asked the contract attorneys for assistance in filing his Arizona petition, but they refused to help him. Mangum further asserts that no one has referred him to, or given him names and addresses of, Arizona attorneys. (Mangum aff., file entry 146.)
As the convicting state, Arizona is responsible for providing legal assistance to an Arizona prisoner housed in another state who desires to file a petition challenging his Arizona conviction. Rich 644 F.2d at 42-43. Defendants state that it is their policy to refer prisoners in Mangum's situation to contract attorneys in the convicting jurisdiction. This would satisfy any obligation they might have under the circumstances described by Mangum.[4]

D. Family Relationships

The Supreme Court has recognized that some interests are so important in our society as to be characterized as fundamental in nature. The Court has been particularly concerned with the area of familial relationships. For example, the Court has stated that the freedom to marry is "one of the vital personal rights essential to the orderly pursuit of happiness." Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967). The Court described marriage as one of the "`basic civil rights of man,' fundamental to our very existence and survival." Id. (quoting Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942)). See also Zablocki v. Redhail, 434 U.S. 374, 384, 98 *1521 S.Ct. 673, 680, 54 L.Ed.2d 618 (1978) (stating that "the right to marry is of fundamental importance for all individuals"); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) (stating that the right "to marry, establish a home and bring up children" is a liberty interest protected by the due process clause). Of particular relevance to the instant case, the Supreme Court has held that prison inmates have a constitutional right to marry although legitimate security considerations may justify placing reasonable restrictions upon the right. Turner v. Safley, 482 U.S. at 94-99, 107 S.Ct. at 2265-67.
Outside the prison context, the Court has recognized the importance of access to the courts in order to terminate the marital relationship. In Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), indigents who sought to institute divorce proceedings were denied access to state courts because they could not pay costs and fees. The Court held that in light of the importance of the marital relationship in our society's hierarchy of values and the fact that the state had a monopoly on the means to legally dissolve marriages, the denial of access to the courts based on an inability to pay fees violated the indigents' due process rights. Cf. United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (holding that filing fees in bankruptcy proceedings did not deprive indigents of due process or equal protection because elimination of debt was not a fundamental interest and court proceedings were not the only means of adjusting relationships with creditors).
The Supreme Court has also acknowledged the importance of parental rights. The Court held in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), that an unwed father is entitled to a hearing to consider his fitness as a parent before his parental rights can be terminated. Furthermore, the Court has recognized that in some circumstances, due process requires that counsel be appointed to represent parents in proceedings to terminate their parental rights. Lassiter v. Department of Social Servs., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In Lassiter, the Court emphasized the importance of parental rights stating that "a parent's desire for and right to `the companionship, care, custody and management of his or her children' is an important interest that `undeniably warrants deference and, absent a powerful countervailing interest, protection.'" Id. at 27, 101 S.Ct. at 2159-60 (quoting Stanley v. Illinois, 405 U.S. at 651, 92 S.Ct. at 1212-13).
The Court has recognized the necessity of state expenditure to insure a prisoner's right to due process in paternity proceedings. In Little v. Streater, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), the Court held that denying blood tests to an indigent prison inmate because of his inability to pay violated his right to due process in defending a paternity suit. The Court stressed the importance of familial bonds stating that just as their termination requires due process, so does their imposition. Little, 452 U.S. at 13, 101 S.Ct. at 2209. See also Nordgren v. Mitchell, 716 F.2d 1335 (10th Cir.1983) (setting forth the standard for appointing counsel to defend indigent inmates in paternity suits).
Defendants argue that contract attorney assistance can only be justified for claims that relate uniquely to an inmate's confinement and that assistance in other matters would place prisoners in a better position than indigent persons who are not incarcerated. Defendants state that inmates certainly do not have a greater interest in the adjustment of human relationships than do free citizens. In defendants' view, the only barrier to court access faced by a prisoner, which is not faced by any other indigent person, is that the prisoner cannot walk into the courthouse to file his petition or complaint. Defendants attempt to distinguish Boddie by arguing that in that case, the state erected a barrier which deprived citizens of access to the courts to file divorce actions. In contrast to Boddie, prison officials in the instant case do not impede inmates in filing lawsuits. Rather, prisoners may petition the courts to waive filing fees, may retain an attorney or have friends or relatives assist them in legal actions, and are provided with writing materials, postage, and telephone access. Defendants argue that under UDC policy and practice, prisoners can gain access to the courts just as well as a free, indigent *1522 person. (Defs.' Supplemental Mem.Supp. Mot.Summ.J. at 10-13, file entry 106.)
Defendants' argument overlooks the fact that an unincarcerated indigent person is free to go to an attorney, explain his claim, and try to convince the attorney to accept the representation. Furthermore, if an unincarcerated person chooses to represent himself, he can go to a law library to do legal research and educate himself on how to prepare his petition or complaint. It is undisputed that plaintiffs in this case do not have access to an adequate law library. In order to secure representation by an attorney, a prisoner would have to contact an attorney by mail or telephone, and in most cases, convince him to take on the representation free of charge with the hope that he might get some compensation if he wins the case. This could prove to be a difficult task for inmates who are often ignorant, illiterate, and have difficulty expressing themselves, particularly in writing. See Jennifer Gerarda Brown, Posner, Prisoners, and Pragmatism, 66 Tul.L.Rev. 1117, 1140-44 (1992) (discussing the difficulties prisoners face in gaining access to the market for legal services).
Defendants state that although a less strict standard applies in the prison context, the Supreme Court implicitly held in Boddie that an individual's right to due process may be restricted if a compelling state interest exists. Defendants state that incarceration of convicted felons is a compelling state interest which must be weighed against the "extremely minimal barrier to the courts, if any," that exists as a result of incarceration. (Defs.' Supplemental Mem.Supp.Mot.Summ.J. at 13, file entry 106.) Defendants argue that the only real barrier created by the fact of incarceration, the inability to walk down to the courthouse and personally file legal documents, is also present when a prisoner files a conditions of confinement claim. Consequently, an inmate generally has to mail his complaint even though he is entitled to the assistance of an attorney in preparing it. Defendants conclude this argument by stating, "Clearly, moral, welfare, and safety interests of the state, in incarcerating felonious offenders, is sufficiently compelling to warrant the minor inconvenience placed upon a prisoner's ability to access the courts for claims that do not relate to his or her confinement." (Id. at 14.) This argument is without merit since plaintiffs are not claiming that they have the right to go personally to the courthouse to file legal papers.
In light of the fundamental importance of family relationships in our society, the court believes that inmates' right of access to the courts encompasses the right to pursue or defend adjustments of these relationships. Accordingly, the court holds that the UDC should provide assistance in the preparation and filing of the initial papers to oppose the termination of an inmate's parental rights including a request for appointment of counsel. Similarly, the UDC should assist prisoners in preparing petitions for divorce or preparing the initial response in a divorce proceeding. However, defendants' obligation to provide assistance in these types of cases would not extend to matters involving enforcement or contempt proceedings or modification proceedings in divorce cases.
At least one inmate seeks assistance in adopting his wife's children. (Valdez aff. ¶ 2, file entry 99.) The court does not believe that this interest is so fundamental as to warrant requiring defendants to provide assistance with adoption matters. Unlike proceedings to terminate parental rights in which an inmate faces a potentially grievous loss, adoption proceedings contemplate establishment of a legal relationship desired by the inmate. Further, since the inmate's wife presumably favors the adoption and is not incarcerated, she could aid him obtaining access to the courts for that purpose.

E. Workers' Compensation Claims

In Goldberg v. Kelly, the Supreme Court held that due process requires that a public welfare recipient be afforded a hearing before the termination of benefits. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The court noted that for qualified recipients, public welfare benefits provide the only means of obtaining food, clothing, housing, and medical benefits. Id. at 264, 90 S.Ct. at 1018-19.
As with public welfare, workers' compensation benefits may provide a disabled inmate and his family with the only means by which *1523 to live after his release from prison. Further, the benefits could make it possible for the inmate to obtain necessary medical treatment and vocational rehabilitation to allow him to return to the work force rather than facing continued disability. If a workers' compensation claim is not timely and properly filed, an inmate may be precluded from receiving benefits. Accordingly, the state should provide assistance in filing the initial workers' compensation claim.
Defendants argue that they are not obligated to provide inmates with assistance in filing workers' compensation claims. They state that not only is it highly questionable whether access to a state administrative agency is the same as access to the courts, no federal appellate court has ever required prison officials to provide an inmate with an attorney to assist in filing a state workers' compensation claim. Defendants further state that Utah law already provides ample encouragement for private attorneys to represent indigent individuals in workers' compensation cases. As defendants point out, the Utah Code authorizes the Utah State Industrial Commission to regulate and fix attorney's fees for attorneys who are employed by a workers' compensation claimant. Utah Code Ann. § 35-1-87 (1988). The Commission has promulgated a regulation for that purpose. See Utah Admin.Code R568-1-7 (1994).
Although defendants question whether access to administrative proceedings is equivalent to access to the courts, such proceedings are judicial in nature and provide the only means by which an eligible inmate may obtain worker's compensation benefits. Consequently, an inmate who is denied meaningful access to such proceedings may be deprived of benefits to which he is entitled. See Boddie, 401 U.S. at 376, 91 S.Ct. at 785 (emphasizing that resort to state courts was the only available avenue for relief). Under the circumstances, administrative proceedings are sufficiently akin to court proceedings as to warrant relief.
The court is unpersuaded by defendants' argument that legal assistance is unnecessary because Utah law provides incentive for private attorneys to undertake representation of workers' compensation claimants. In an analogous situation, federal law similarly provides incentive for private attorneys to represent indigents in civil rights claims through its attorney's fee provision, 42 U.S.C. § 1988. Nevertheless, when prison officials choose not to provide an adequate law library, they must provide assistance in filing such claims by persons trained in the law. Bounds, 430 U.S. at 828, 97 S.Ct. at 1498; Nordgren, 762 F.2d 851. There is no reason to believe that the attorney's fee provision relating to workers' compensation claims provides a greater incentive to private attorneys than section 1988. If anything, it might provide a lesser incentive since the attorney's fee must be paid out of the benefits awarded. See Utah Admin.Code R568-1-7(F) (1994); Graham v. Industrial Comm'n, 27 Utah 2d 279, 495 P.2d 806, 807 (1972); Olympus Oil, Inc. v. Harrison, 778 P.2d 1008, 1010-11 (Utah App.1989). See also Kelli L. Sager, Note, Attorney's Fees in Utah, 1984 Utah L.Rev. 553, 559 (stating that the attorney's fee must be paid out of the award since the commission has no authority to assess attorney's fees against the opposing party). Accordingly, defendants must provide assistance in the initial filing of a worker's compensation claim.

F. Small Claims Court

Plaintiffs also seek assistance in filing claims in small claims court. Defendants argue that since these are state claims, prisoners are not entitled to assistance in filing them.
The Supreme Court has stated that a claim of random and unauthorized deprivation of a prisoner's property by state employees is not cognizable under section 1983 where the prisoner has an adequate state postdeprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203-04, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Claims of such deprivations are not uncommon in the UDC system as evidenced by the number of such claims erroneously filed by prisoners in this court. Generally, the monetary value of such property is not great and the prisoner has an adequate remedy in small claims court if he can gain access to it. Needless to say, *1524 it is more efficient to handle such claims in small claims court than to burden state and federal courts with additional section 1983 cases.
Small claims court personnel often assist unincarcerated individuals in completing the paperwork necessary to initiate a claim. Since prisoners cannot go to court and obtain assistance from court staff, the prison contract attorneys should assist them in preparing the necessary papers to file a case in small claims court. This assistance would be limited to cases alleging the deprivation or destruction of a prisoner's property by persons acting under color of state law pursuant to Parratt and Hudson as discussed above.

G. Assistance Beyond the Initial Pleading Stage

Plaintiffs also seek assistance beyond the initial filing of a petition or complaint or a response in opposition where that is appropriate. However, the Tenth Circuit has ruled that assistance beyond the initial pleading stage is not constitutionally required. Bee, 823 F.2d at 399; Nordgren, 762 F.2d at 855. This court is bound by Tenth Circuit precedent. Therefore, defendants are not entitled to legal assistance beyond the initial filing stage.
One of the plaintiffs has stated that after the magistrate judge had dismissed his original complaint with a suggestion that he file an amended complaint, the contract attorneys refused to assist him in preparing an amended complaint. (Carper aff. ¶ 5, file entry 58.) Where an order dismissing a civil rights complaint in federal court states that the inmate may file an amended complaint, the UDC should provide assistance with the preparation and filing of an amended complaint if the inmate chooses to file one.

H. Assistance in Pro Se Civil Rights Cases

Plaintiffs allege that the contract attorneys have failed to provide them with case law and procedures for use in pending civil rights cases being handled pro se. However, as previously discussed, prison officials are only required to provide access to the courts. They are not constitutionally required to provide further assistance. Bee, 823 F.2d at 399; Nordgren, 762 F.2d at 855.

I. Assistance in Pro Se Criminal Appeals

Plaintiffs state that the contract attorneys have refused to assist in securing case law and procedures for pending pro se criminal appeals. An indigent convicted criminal has the right to appointed counsel on his first appeal as of right. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Courts have held that where a criminal defendant has the right to be represented by appointed counsel, the state is not constitutionally required to provide additional legal assistance if the defendant refuses the services of legal counsel and elects to proceed pro se. See United States v. Smith, 907 F.2d 42 (6th Cir.1990), cert. denied, 498 U.S. 986, 111 S.Ct. 521, 112 L.Ed.2d 533 (1990); United States v. Pina, 844 F.2d 1, 5-6 & n. 1 (1st Cir.1988); United States ex rel. George v. Lane, 718 F.2d 226 (7th Cir.1983); United States v. Wilson, 690 F.2d 1267, 1270-72 (9th Cir.1982), cert. denied, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983); United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir.1978); Bell v. Hopper, 511 F.Supp. 452, 453 (S.D.Ga.1981) (stating that a defendant who chooses to proceed pro se on a criminal appeal must accept the consequences of his choice including his ignorance of the law and court procedure and the lack of an adequate law library). Accordingly, prisoners who waive their right to counsel and elect to proceed pro se on their criminal appeals are not entitled to assistance from the contract attorneys.

J. Petitions for Writs of Certiorari

Plaintiffs seek assistance in filing petitions for certiorari to the Supreme Court. The Court has previously held that states are not constitutionally required to provide appointed counsel for indigent prisoners seeking review by the Supreme Court. Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341; Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). Accordingly, the contract attorneys need not assist in filing petitions for certiorari.

K. Name Changes

The ability to obtain a name change is not likely to affect any substantive right or *1525 fundamental interest of a prisoner. Indeed, because of identification problems, name changes for prisoners may be inimical to the interests of prison management. Further, the changing of a name is generally a simple procedure not requiring legal expertise. Accordingly, prisoners are not entitled to legal assistance for the purpose of name changes.

L. Personal Injury Matters

Plaintiffs seek assistance in prosecuting and defending personal injury matters and intentional and unintentional torts. State tort claims generally do not involve fundamental interests. See, e.g., Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979) (state tort claims are not cognizable under section 1983). Moreover, other means exist for their resolution besides formal court action, at least when an inmate is the plaintiff. See Kras, 409 U.S. 434, 93 S.Ct. 631. When an inmate is defending a personal injury suit, the court represents the only means of resolving the dispute. See Boddie, 401 U.S. at 376, 91 S.Ct. at 785. However, the court has discretion to appoint counsel to represent such an inmate in appropriate cases. Accordingly, plaintiffs are not entitled to assistance with personal injury and other tort cases.

M. Breach of Contract Claims

Plaintiffs seek assistance with breach of contract claims. However, obtaining a remedy for a breach of contract does not rise to the level of a fundamental interest. Further, this is the type of private dispute that can be resolved outside the courts. In Boddie, the Court contrasted the freedom of individuals to enter into and rescind commercial contracts without judicial imprimatur with dissolution of marriage which cannot be completed without invoking the state's judicial machinery. Boddie, 401 U.S. at 376, 91 S.Ct. at 785. Accordingly, plaintiffs are not entitled to assistance with breach of contract claims.

N. Collection Matters

Some members of the plaintiff class have requested assistance in pursuing claims for money owed them. This type of claim is not fundamental in nature. Further, other means exist for resolving this kind of claim. See Kras, 409 U.S. 434, 93 S.Ct. 631. Accordingly, this claim does not fall within the scope of required assistance.

VII. ATTORNEY'S FEES
Both parties have asked for attorney's fees. Since plaintiffs are prevailing parties, they are entitled to attorney's fees under 42 U.S.C. § 1988. See Farrar v. Hobby, ___ U.S. ___, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); Hensley v. Eckerhart, 461 U.S. 424, 429, 433, 103 S.Ct. 1933, 1937, 1939, 76 L.Ed.2d 40 (1983); Hanrahan v. Hampton, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Plaintiffs should submit a motion for the award of fees supported by appropriate affidavits justifying the amount requested.
Defendants have asked for attorney's fees and costs on the ground that plaintiffs' claim that they should be provided with assistance beyond the initial pleading stage is frivolous. A district court may, in its discretion, award attorney's fees to a prevailing defendant in a civil rights case upon a determination that the suit is frivolous, unreasonable, or without foundation. Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978); Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); Fry v. Board of County Comm'rs, 7 F.3d 936, 943 (10th Cir.1993); Shaw v. Neece, 727 F.2d 947, 949 (10th Cir.1984), cert. denied, 466 U.S. 976, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984). However, the fact that a plaintiff may ultimately lose the case is not sufficient grounds for awarding attorney's fees. Hughes v. Rowe, 449 U.S. at 14, 101 S.Ct. at 178; Christiansburg, 434 U.S. at 421-22, 98 S.Ct. at 700-01. Further, a suit is not frivolous or groundless where the plaintiff has an arguable basis for pursuing the claim. See Smith v. Smythe-Cramer Co., 754 F.2d 180, 184 (6th Cir.1985), cert. denied, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).
In the instant case, plaintiffs had an arguable basis for pursing their claim that they are entitled to legal assistance beyond the initial filing stage. Support for this claim can be found in the Bounds decision. After discussing the necessity of a law library for framing *1526 pro se pleadings, the Supreme Court in Bounds made the following statement:
Moreover, if the State files a response to a pro se pleading, it will undoubtedly contain seemingly authoritative citations. Without a library, an inmate will be unable to rebut the State's argument. It is not enough to answer that the court will evaluate the facts pleaded in light of the relevant law. Even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation.
Bounds, 430 U.S. at 826, 97 S.Ct. at 1497.
The Bounds Court obviously believed that access to a law library for inmate litigants was necessary beyond the initial pleading stage. In a case such as this where inmates have no access to a law library, the argument that inmates should have legal assistance beyond the initial pleading stage is even more compelling. Although the court believes that Tenth Circuit precedent requires that it deny plaintiffs' claim to legal assistance beyond the initial pleading stage, this claim is not frivolous or without foundation. See Fry, 7 F.3d at 943. Accordingly, it would be inappropriate for the court to award defendants their attorney's fees for defending against this claim.
Defendant Holden asks for attorney's fees incurred in defending this case after she filed her answer. She states that as warden, she did not participate in the formulation or implementation of the legal services contract. She contends that no affirmative link exists between her actions and the alleged constitutional violations and that this should have been apparent after she answered the complaint.
In order to prevail on a section 1983 claim, a plaintiff must show that the defendant personally participated in the alleged deprivation of protected rights. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Durre v. Dempsey, 869 F.2d 543, 548 (10th Cir.1989); Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th Cir.1988). Although defendant Holden did not participate in the formulation of the legal services policy, she was responsible as warden for assuring that inmates in her custody had constitutionally adequate access to the courts. See generally Meade, 841 F.2d at 1527-28; Smith v. Hill, 510 F.Supp. 767, 770-71 (D.Utah 1981). Because of this responsibility, defendant Holden was an appropriate defendant and is not entitled to attorney's fees.

VIII. CONCLUSION
No genuine issue of material fact exists and plaintiffs are entitled to summary judgment as a matter of law. Accordingly, plaintiffs are entitled to a declaration that the scope of the present UDC legal contract provides insufficient legal assistance to meet constitutional requirements.
In addition, plaintiffs are entitled to an injunction requiring defendants to provide legal assistance through the preparation and filing of the initial complaint or pleading in all civil rights cases and matters that involve fundamental interests requiring due process such as proceedings to terminate parental rights, divorces, worker's compensation claims, and complaints in small claims court involving claims of deprivation of property by persons acting under color of state law. The relief granted is limited to the preparation and filing of a complaint or petition or, where an inmate is a defendant, the initial responsive pleading. In cases in which the United States District Court dismisses a complaint under 28 U.S.C. § 1915(d) with leave to amend, the relief granted should extend to the filing of an amended complaint. Therefore,
IT IS HEREBY ORDERED that judgment be entered in favor of plaintiffs in accordance with this opinion.
NOTES
[1] Similar relief was later extended to David Jolivet, Edward S. Deli, Jason S. Vigil, and Gary B. Edwards. (2d Prelim.Inj., file entry 189.)
[2] The court interprets the phrase "out-of-state-litigation" to refer to claims by Utah inmates housed in other jurisdictions and out-of-state inmates housed in the Utah prison system.
[3] In Foote, the court held that since the Board of Pardons determines the actual length of a sentence under Utah's indeterminate sentencing scheme, prisoners must be afforded due process protection at original parole grant hearings. Foote, 808 P.2d at 735. The court has since clarified the scope of due process requirements in original parole proceedings and held that the newly announced due process safeguards do not apply retroactively. Labrum v. Utah State Bd. of Pardons, 870 P.2d 902 (Utah 1993).
[4] In Petrick v. Maynard, 11 F.3d 991 (10th Cir. 1993), the Tenth Circuit held that Oklahoma officials had a duty to assist an Oklahoma prisoner in obtaining legal materials from North Dakota and Minnesota. The inmate sought the materials to attack prior convictions in those states which had been used to enhance his Oklahoma sentence. Although the factual situation is different, Petrick is consistent with this opinion since it requires the convicting state to provide legal assistance to the prisoner.