Andrew Lee JACKSON,
Plaintiff-Appellant,

v.

Raymond K. PROCUNIER, Director, Texas Department of Corrections, et al., Defendants-Appellees.

No. 84–2239.

United States Court of Appeals, Fifth Circuit.

May 9, 1986.

---

Jim Mattox, Atty. Gen., David A. Harris, Gabriel G. Guintanilla, Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

Andrew Lee Jackson, pro se.

Kevin B. Wiggins (court-appointed), Dallas, Tex., for plaintiff-appellant.

Before GEE, RUBIN, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A prisoner asserts that he was deprived of his constitutional right of access to the courts when his petition in forma pauperis was intentionally delayed by prison mailroom personnel. The delay resulted in the dismissal of his state appeal from an adverse judgment in a civil suit. The court below interpreted his claim as a negligent deprivation of property without due process. It dismissed the complaint for failure to state a claim on the ground that due process was satisfied by the existence of a post-deprivation state tort remedy. We find, however, that the district court misinterpreted the pro se complaint, which also states a cause of action for the intentional deprivation of a constitutional right implicit in the first amendment and in substantive due process. We, therefore, reverse the dismissal and remand the case for further proceedings, reserving ruling for issues that may possibly lurk in the case until the district court has either found the facts or the material facts have been made clear beyond genuine dispute.

## I.

Andrew Lee Jackson, while incarcerated in a Texas prison, was a defendant in a civil suit in the Texas courts. He lost at trial, and on July 12, 1979, was notified by his counsel that his motion for a new trial had been denied, and that an appeal would require either posting an $8,000 bond before July 30 or filing an affidavit of his inability to do so by July 19. His allegations and deposition testimony are uncontradicted on the record therefore, we take the following facts as established. Jackson immediately prepared an affidavit of poverty and had it notarized the next day by Jack Garner, the Assistant Warden. Garder denied Jackson permission to enter the mailroom or to speak with a prison mail officer to determine the correct postage to send the affidavit by certified mail. He suggested that Jackson guess at the amount required.

Jackson deposited the affidavit in a prison mailbox that night. He attached two dollars in postage, printed *"Attention, Urgent"* in large red letters on the envelope, and attached a note instructing the mail officers to send the envelope by certified mail if there was enough postage, otherwise to send it first class. The envelope was addressed to his attorney, and the note stated that it contained legal documents that had to be in court by July 19.

The next morning, July 14, the envelope was collected by a prison mail officer. It was returned to Jackson four days later, on the evening of the 18th, with a note that 41 cents more was needed to pay for the postage for certified mail. Jackson mailed it a second time that evening. It reached his attorney on the 23rd, and the attorney filed

the affidavit in court the same day. Despite Jackson's written explanation for the delay the Texas court dismissed his appeal for failure to timely file the affidavit.

Jackson brought suit pro se, under 42 U.S.C. § 1983, alleging that Garner and the mailroom personnel denied his right of access to the courts by deliberately delaying his mail, ignoring his instructions, and preventing him from ascertaining the correct postage. He named as defendants the four mailroom officers on duty during the five days that his mail was delayed; Assistant Warden Garner; C.D. Burson, the Building Major; E.H. Turner, the Warden; and W.J. Estelle, the Director of the Texas Department of Corrections.

Jackson was granted an evidentiary hearing, of which no transcript was made, and was deposed by the defendants' attorney. Jackson's efforts to conduct discovery, obtain mailroom records, and serve interrogatories were repeatedly rebuffed, even after his motion to compel discovery was granted. Jackson was unable, therefore, to fix responsibility on any particular defendant or to adduce support for his allegations that the delay was intentional.

The defendants filed a motion seeking summary judgment, suggesting, inconsistently, that the "complaint should properly be dismissed by this Court for failure to state a claim upon which relief can be granted pursuant to Rule 56." They argued that the complaint stated nothing more than a tort, and that, under *Parratt v. Taylor*[1] and *Baker v. McCollan*,[2] the existence of a state law remedy provided adequate due process for any deprivation that Jackson might have sustained. Drawing support from Jackson's deposition, the motion argued that respondeat superior was the sole basis for including Burson,

Turner, and Estelle as defendants, and that they should therefore be dismissed from the case because § 1983 does not impose vicarious liability.[3] Deposition excerpts were submitted with the motion.

Jackson filed a pro se response, stating that he had not alleged a negligent deprivation of property without procedural due process, as in *Parratt*, but a deliberate violation of his constitutional right of access to the courts, guaranteed by the fourteenth amendment. He also raised a disputed issue of material fact, claiming that the prison supervisory personnel knew of "a long history of deliberate and malicious" mishandling of the prisoners' legal correspondence, and that the supervisors were personally responsible for the deprivation he suffered because of their refusal to correct the longstanding abuses of their subordinates.

In ruling on the motion, the magistrate referred to Jackson's deposition, but also took the allegations of his complaint as true. He characterized Jackson's action as a tort for negligent handling of mail, stating "there is not even an allegation by plaintiff that any of the Defendants knew the contents of or the urgency of the package." He concluded that, under *Parratt*, the existence of a state tort post-deprivation remedy provided sufficient procedural due process, and Jackson had suffered no constitutional deprivation. Consequently, he dismissed the complaint "without prejudice." The district court adopted the magistrate's report, and Jackson appealed.

## II.

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to be evaluated only on the pleadings.[4] It is not interchangeable with

---

**1.** 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 240 (1981).

**2.** 443 U.S. 137, 99 S.Ct. 1689, 61 L.Ed.2d 433 (1979).

**3.** *See, e.g., Monell v. Department of Social Services,* 436 U.S. 658, 690–93, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1977); *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir.1983); *Languirand v. Hay-*

*den,* 717 F.2d 220, 223–25 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *Reimer v. Smith,* 663 F.2d 1316, 1324 (5th Cir.1981).

**4.** 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1356, at 592 (1969).

a motion for summary judgment, for the latter may impose a burden on the non-moving party to supplement its pleadings with affidavits, depositions, or other evidence to demonstrate that a genuine dispute exists over material facts.[5] A complaint sought to be dismissed under Rule 12(b)(6) may generally be amended to cure its deficiencies.[6] Summary judgment, however, is a final adjudication on the merits.

■ When, as here, matters outside the pleadings are presented to, and considered by, the district court, Federal Rule of Civil Procedure 12(b) provides that the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56," so long as the opposing party has been afforded the opportunity to respond in accordance with Rule 56.[7] In such cases, an appellate court may review the lower court's decision as one for summary judgment, even if the court mislabeled it as a 12(b)(6) dismissal.[8] We, therefore, review the district court's dismissal as a grant of summary judgment.

### III.

In *Augustine v. Doe*, we held, *"Parratt* applies only when the plaintiff alleges a deprivation of procedural due process; it is irrelevant when the plaintiff has alleged a violation of some substantive constitutional proscription."[9] While *Parratt* has been

partially overruled,[10] this limitation remains applicable to so much of the decision as has continuing force.

Had Jackson alleged only a deprivation of procedural due process, whether negligent or intentional,[11] the magistrate's disposition of the complaint would have been correct. Had Jackson alleged only a negligent deprivation of substantive due process, his complaint would also have failed as a matter of law under the recent Supreme Court decisions of *Davidson v. Cannon*[12] and *Daniels v. Williams.*[13] We find, however, that the magistrate mischaracterized Jackson's complaint, for Jackson expressly alleged the knowing and intentional deprivation of an enumerated constitutional right.

A substantive right of access to the courts has long been recognized.[14] In *Ryland v. Shapiro*, we characterized that right as "one of the fundamental rights protected by the Constitution."[15] In *Wilson v. Thompson*, we stated, "[i]t is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances."[16] That right has also been found in the fourteenth amendment guarantees of procedural and substantive due process.[17] Consequently, interference with access to the courts may constitute the deprivation of a substantive constitutional right,

---

**5.** *See* Fed.R.Civ.P. 56(e).

**6.** *See* Fed.R.Civ.P. 15(d); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 12.07[2.–5], at 12–72 (2d ed. 1982).

**7.** Fed.R.Civ.P. 12(b).

**8.** Fed.R.Civ.P. 12(b)(6) advisory committee note.

**9.** 740 F.2d 322, 329 (5th Cir.1984).

**10.** *See Daniels v. Williams,* ⸺ U.S. ⸺, ⸺, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

**11.** *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

**12.** ⸺ U.S. ⸺, ⸺, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986).

**13.** ⸺ U.S. ⸺, ⸺, 106 S.Ct. 662, 666–67, 88 L.Ed.2d 662 (1986).

**14.** *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977).

**15.** 708 F.2d 967, 971 (5th Cir.1983) (citing *Chambers v. Baltimore & Ohio R.R. Co.,* 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907)).

**16.** 593 F.2d 1375, 1387 (5th Cir.1979). *Accord NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963); *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427–28 (8th Cir.1986); *Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358, 1363 (5th Cir.1983); *McCray v. Maryland,* 456 F.2d 1, 6 (4th Cir. 1972); *Harris v. Pate,* 440 F.2d 315, 317 (7th Cir.1971); *cf. Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

**17.** *Ryland,* 708 F.2d at 971–75. *See also Green v. Warden,* 699 F.2d 364, 369 (7th Cir.1983).

as well as a potential deprivation of property without due process, and may give rise to a claim for relief under § 1983.[18] Any deliberate impediment to access, even a delay of access, may constitute a constitutional deprivation.[19]

■ The defendants argue that a prisoner's right of "adequate, effective, and meaningful" access to the courts, as recognized by the Supreme Court in *Bounds v. Smith*,[20] is limited to the presentation of constitutional, civil rights, and habeas corpus claims. As we have recently said, obiter dicta, in *Morrow v. Harwell*,[21] the *Bounds* opinion was primarily concerned with constitutional and civil rights claims and with the minimum legal resources that prisons must provide to inmates to ensure effective access to the courts. Recognition of the constitutional right of access to the courts, however, long precedes *Bounds*, and has from its inception been applied to civil as well as constitutional claims. Almost eighty years ago, in *Chambers v. Baltimore & Ohio Railroad Co.*,[22] the Supreme Court recognized this right of access in the context of a diversity tort suit, founding the right on the privileges and immunities clause, and stating:

> The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship ... granted and protected by the federal constitution.[23]

More recently, in *Boddie v. Connecticut*,[24] the Supreme Court relied on this right, founded on the Fourteenth Amendment, to prohibit states from denying access to the courts to indigents who sought a civil divorce but were unable to pay docket fees. And in *Corpus v. Estelle*, we held that a prisoner's "reasonable access to the courts must include access in general civil legal matters including but not limited to divorce and small claims." [25]

Although *Bounds* did not discuss civil suits, neither that opinion, nor our dicta in *Morrow*, undermines the previously recognized right of access to the courts in civil matters. If Jackson has alleged a deliberate denial of his right of access to the courts to pursue his civil appeal, he has alleged the deprivation of a substantive constitutional right found in the first amendment, as well as a potential deprivation of substantive and procedural due process.

IV.

■ Pro se complaints must be liberally construed,[26] but, even without benefit of that lenient standard, the magistrate erred in describing Jackson's claim as one of mere negligence. The complaint states that the mail officers deliberately held up Jackson's mail when they should reasonably have known that the delay would deprive him of his right of access to the courts. He alleges that Garner violated prison policy in denying him an opportunity to calculate the postage and thereby misused his authority as an officer of the

18. *Ryland,* 708 F.2d at 972, 975; *Martin v. Wainwright,* 526 F.2d 938, 939 (5th Cir.1976); *Barlow v. Amiss,* 477 F.2d 896, 898 (5th Cir.1973); *cf. Procunier v. Martinez,* 416 U.S. 396, 417–19, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224, (1974); *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974); *Mitchum v. Purvis,* 650 F.2d 647, 648 (5th Cir.1981).

19. *Ryland,* 708 F.2d at 972, 974. *See, e.g., Crews v. Petrosky,* 509 F.Supp. 1199, 1204 (W.D.Pa. 1981); *cf. Taylor v. Sterrett,* 532 F.2d 462, 475 (5th Cir.1976).

20. 430 U.S. 817, 821–23, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977)).

21. 768 F.2d 619, 623 (5th Cir.1985).

22. 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907).

23. *Id.* at 148, 28 S.Ct. at 35.

24. 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

25. 551 F.2d 68, 70 (5th Cir.1977); *see also Harrison v. Springdale Water & Sewer Co.,* 780 F.2d 1422, 1427–28 (8th Cir.1986).

26. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Tyler v. Pasqua,* 748 F.2d 283, 285 (5th Cir.1984).

state. He provides a copy of the Rules and Instructions of the Texas Department of Corrections that require all prisoner mail to be handled with reasonable dispatch. The Rules state that legal correspondence need not be opened for inspection and that "no incoming or outgoing attorney or legal aid society correspondence shall be delayed for more than forty-eight (48) hours, except over weekends when seventy-two (72) hours is allowed ...." In his response to the motion for summary judgment, Jackson asserted that this policy, if practiced, would constitute reasonable access, but claimed that it has been flagrantly violated. He alleged "a long history of deliberate and malicious indifference in the handling of Inmate legal mail" of which the Warden and prison supervisors were aware, and which they condoned, approved of, and collaborated in.

Even the defendants' motion for summary judgment does not characterize the complaint as one of pure negligence. It assumes *arguendo* that, as Jackson alleges, the injury was maliciously caused, but strives to apply *Parratt* nonetheless. The deposition excerpts, although stating Jackson's belief that Garner was negligent, neither undermine nor confirm his allegations of intentional conduct. We conclude, therefore, that Jackson's pleadings state a cause of action under § 1983, and the record does not at this time provide grounds for summary judgment.

Following the lead of the Supreme Court in *Daniels v. Williams*, we observe: "This case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protection of the due process clause." [27] We also reserve judgment on whether an intentional five day delay would be a deprivation of a constitutional right if it could be shown that no real prejudice resulted because the appeal was purely frivolous.[28]

On remand, the defendants may be able to demonstrate, on a motion for summary judgment properly supported by affidavits, depositions, and other evidence not yet entered into the record, that Garner and the mail officers did not intentionally delay Jackson's mail or that the prison's supervisory personnel were neither cognizant of, nor personally responsible for, the delay. If Jackson is unable to furnish similar evidence to create a genuine dispute of material fact, summary judgment against some or all of Jackson's claims may then be appropriate.

Jackson has stated, on appeal, that he has been unable to conduct discovery to support his complaint. The record confirms his persistent and largely fruitless efforts. If, for this reason, Jackson is unable to rebut the defendant's motion for summary judgment, additional court-supervised discovery or evidentiary hearings may prove necessary. A plaintiff's inability to obtain evidence under control of the defendants does not justify summary judgment.[29]

For these reasons, the order of the district court dismissing this case is RE-VERSED, and the case is REMANDED for further proceedings consistent with this opinion.

---

**27.** —— U.S. at —— n. 3, 106 S.Ct. at 667, n. 3.

**28.** *Cf. Moran v. Burbine,* —— U.S. ——, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d, 433 (1979).

**29.** Fed.R.Civ.P. 56(f) states:

should it appear from the affidavits of a party opposing [summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.