**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 9 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

WILLIE J. SIMKINS,

　　　　　Plaintiff-Appellant,

v.

LOUIS E. BRUCE; SAM CLINE;
HUTCHINSON CORRECTIONAL
FACILITY MAIL ROOM STAFF; SIX
UNKNOWN DEFENDANTS,

　　　　　Defendants-Appellees.

No. 04-3072

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 01-CV-3280-KHV)

Submitted on the briefs:

Willie J. Simkins, pro se.

Phill Kline, Attorney General, Ralph J. De Zago, Assistant Attorney General,
Topeka, Kansas, for Defendants-Appellees.

Before **LUCERO, McKAY**, and **PORFILIO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Plaintiff Willie J. Simkins is an inmate at the Hutchinson Correctional Facility ("HCF"). He brought this action under 42 U.S.C. § 1983 to redress legal injury allegedly caused while he was temporarily transferred to another facility and his legal mail was held at HCF rather than forwarded to him. [1] After filing a Martinez report, [2] defendants moved for summary judgment on various grounds. The district court rejected some of defendants' arguments, but ultimately granted the motion on two alternative bases: (1) plaintiff failed to show that an injury resulted from his belated receipt of the mail, and (2) defendants were entitled to qualified immunity because they had not acted intentionally or maliciously. We review the district court's summary judgment determination de novo, Hayes v. Marriott, 70 F.3d 1144, 1146 (10th Cir. 1995), and **REVERSE** for the reasons stated below.

## I

The basic facts are not in dispute. In March 2000, plaintiff was transferred from HCF to a jail in Boulder, Colorado, for court proceedings. Upon his return

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2] A Martinez report is a judicially authorized investigative report prepared by prison officials to help the court determine if "a pro se prisoner's allegations have any factual or legal basis." Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992).

in March 2001, he learned that legal mail sent to him in the interim had been held by HCF staff. Some mail items that were held related to a federal civil rights action he had initiated concerning conditions at a Saline County, Kansas jail. The defendants in that action had filed a motion for summary judgment in April 2000, which was deemed uncontested (resulting in admission of the defendants' factual allegations) and granted on the merits by an order entered in July 2000. The motion and order were still at HCF when plaintiff returned in 2001.

Plaintiff filed this § 1983 action claiming that the failure of HCF personnel to forward his legal mail interfered with his right of access to the courts. The district court did not gainsay the constitutional basis of plaintiff's claim, but held that he had not shown an associated injury sufficient to give him standing to seek judicial redress for the asserted constitutional violation. The court also held that plaintiff's claim would, in any event, merit dismissal on qualified immunity grounds. We of course recognize the analytical primacy of standing deficiencies, but as we conclude that there is no such deficiency here, we choose to begin with the qualified immunity issue for ease and clarity of exposition.

**II**

Our analysis of qualified immunity involves two steps. The threshold inquiry is whether the alleged facts (or, on summary judgment, the evidenced facts) taken in the light most favorable to the plaintiff show a constitutional

violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquires concerning qualified immunity." Id. "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. This question must be posed in the context of the particular case before the court, not as a general, abstract matter: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." Id. at 202; see also Brosseau v. Haugen, 125 S.Ct. 596, 599 (2004) (emphasizing inquiry is to be undertaken in light of the specific context of the case).

Invoking this two-step framework, the district court resolved the matter at the first step, holding that plaintiff had not demonstrated any constitutionally prohibited conduct. Although it did not deny that holding up legal mail may violate an inmate's right of access, the district court nonetheless held that such a violation would require intentional, not merely negligent, conduct and concluded that this case did not involve such conduct. In our view, however, the facts of record and the authority cited by the district court demonstrate why this case involves intentional conduct, not mere negligence.

**A**

In order to provide inmates a meaningful right of access to the courts, "states are required to provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights and other civil rights actions related to their incarceration, but in all other types of civil actions, states may not erect barriers that impede the right of access of incarcerated persons." Snyder v. Nolen, 380 F.3d 279, 290-91 (7th Cir. 2004) (quotation omitted); see also Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir. 1992) ("Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation"). In the present case, plaintiff's claim that a right of access to the courts has been impeded requires him to allege intentional conduct interfering with his legal mail, and does not require an additional showing of malicious motive. [3]

---

[3] The Supreme Court has held that qualified immunity is governed by an objective reasonableness standard, and thus, "[e]vidence concerning the defendant's subjective intent is simply irrelevant to that defense." Crawford-El v. Britton, 523 U.S. 574, 588 (1998) (discussing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). In certain circumstances there may be reason to distinguish "between an intentional act by prison officials to impede a prisoner's access to the courts and an intentional act that [only] results in an impediment to court access." Gregory v. Nunn, 895 F.2d 413, 415 n.2 (7th Cir. 1990) (noting but not adopting distinction). Here, however, because the connection between the act (withholding inmate's legal mail) and the impediment to access (inmate's non-receipt of legal mail) is neither indirect nor unexpected but, rather, immediate and obvious, the distinction lacks legal substance. Deliberate delay in the delivery of inmate legal mail is sufficient to satisfy the intent requirement for a right-of-access claim. See Gramegna v. Johnson, 846 F.2d 675, 677 (11th Cir. 1988); Jackson, 789 F.2d at

(continued...)

See Treff v. Galetka, 74 F.3d 191, 195 (10 th Cir. 1996); Jackson v. Procunier, 789 F.2d 307, 311 (5 th Cir. 1986); Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986). By contrast, when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs. See Pink v. Lester, 52 F.3d 73, 77 (4 th Cir. 1995) (discussing cases from several circuits). In its Memorandum and Order, the district court relied on cases involving inadvertently lost, not intentionally held mail. See, e.g., Richardson v. McDonnell, 841 F.2d 120, 122 (5 th Cir. 1988) (holding that unintentional loss of mail does not support access-to-courts claims and distinguishing situations involving intentional withholding of mail).

In the present case, the HCF mail room supervisor, Patricia Keen, submitted an affidavit stating: "I did receive mail for [plaintiff] after he was removed from this facility to attend court in Colorado on March 3, 2000, and, in accordance with my training, I held the mail until [plaintiff] returned from court on March 21, 2001."[4] (R. Doc. 32, ex. 4 at 1 (emphasis added).) Reflecting a course of conduct deliberately undertaken, the emphasized language suggests no evidence of negligent omission or inadvertence. The affidavit recites an HCF regulation,

---

[3](...continued)
311.

[4]     We note that the mail in question was sent in envelopes clearly indicating the legal nature of their contents.

however, that prescribes precisely the opposite course to that which Keen took: "Inmates who are out to court are to have their mail forwarded to the county jail in the county in which the court resides, unless another address is supplied by the court." (R. Doc. 32, ex. 4 at 2.) Addressing the inconsistency between her conduct and the regulation, Ms. Keen states that although she knew mail was forwarded to inmates transferred out to courts within Kansas, she "was trained that I am to hold the mail for inmates sent out to court out of state until their return to HCF." (R. Doc. 32, ex. 4 at 2.) Because the regulation makes no exception for inmates transferred out of state, it seems clear that Ms. Keen, as she states, "did not understand that mail for inmates out to court out of state was to be forwarded." Id.

Thus, defendants' own evidence demonstrates that Ms. Keen intentionally held plaintiff's mail for over a year in contravention of prison regulations. That course of action is not mere negligence; rather, it is intentional conduct violating plaintiff's right of access to the courts.

**B**

Having established that plaintiff's right of access to the courts was violated by Ms. Keen's ignorance of governing law, we must now ask whether the law was clearly established. Under this second qualified immunity inquiry, the critical question is whether a reasonable prison official should have known that delaying

delivery of plaintiff's legal mail for over a year would violate his right of access to courts. See Saucier, 533 U.S. at 201 (requiring this inquiry "be undertaken in light of the specific context of the case, not as a broad general proposition").

Because we have held in the context of alleged interference with inmate legal mail that the "prisoner's constitutional right of access to the courts is clearly established," Treff, 74 F.3d at 194, the second inquiry is easily resolved. Indeed, the principle that unimpeded transmission of inmate legal mail is the "most obvious and formal manifestation" of the right of access to the courts, Crowder v. Sinyard, 884 F.2d 804, 811 (5 th Cir. 1989), has been clearly established for some time now. See, e.g., Gramegna, 846 F.2d at 677; Jackson, 789 F.2d at 310-11; see also Henriksen v. Bentley, 644 F.2d 852, 854 (10 th Cir. 1981) (holding, in civil rights suit based on clerk's unexplained failure to pick up inmate's legal mail after notification of its existence, that "actions which prevent an individual from communicating with a court could constitute denial of access to the court," and thereby "violate[] a recognized constitutional right").

Plaintiff has asserted the violation of a clearly established constitutional right. Accordingly, the entry of summary judgment for defendants on the basis of qualified immunity was error.

## III

With a clear understanding of the nature of the underlying claim, we turn now to the question whether plaintiff suffered a cognizable injury sufficient to afford him standing to seek relief. He must show that non-delivery of his legal mail resulted in "actual injury" by "frustrat[ing]," "imped[ing]," or "hinder[ing] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351-53 & n.3 (1996). Given that plaintiff's failure to receive the summary judgment motion and order in the prior action resulted in (1) admission of the defendants' version of the facts, (2) inability to argue the legal issues, and (3) loss of an opportunity to appeal, this case presents a compelling example of an impediment or hindrance demonstrating actual injury under Lewis. The district court, however, based its conclusion that defendants were entitled to summary judgment on the fact that "[p]laintiff provides no evidence that had he received a copy of [the] motion for summary judgment in [the prior case], he would have filed a meritorious response" and, hence, had not shown "that defendants' failure to forward his mail caused him to lose [the case]."

Contrary to the district court's analysis, Lewis does not suggest that the plaintiff must prove a case within a case to show that the claim hindered or impeded by the defendant necessarily would have prevailed. The Court took pains to explain that "[d]epriving someone of an arguable (though not yet established)

-9-

claim inflicts actual injury," Lewis, 518 U.S. at 353 n.3 (emphasis added).

Moreover, the Court explained that cognizable harm arises not only when a claim is lost or rejected on account of the defendant's misconduct, but also when the plaintiff's efforts to pursue a claim are impeded. See id. at 351, 353 & n.4. Consistent with these points, a plaintiff need not show that a claim with which a defendant interfered would have prevailed, but only that it was not frivolous. [5] Id. at 353 & n.3. See also Walters v. Edgar, 163 F.3d 430, 434 (7th Cir. 1998) (holding that to satisfy Lewis, plaintiff need not show "that had it not been for his being denied access to the courts, he would have won at least one court case"; rather, plaintiff need only show "that the blockage prevented him from litigating a nonfrivolous case"); Penrod, 94 F.3d at 1403 (requiring prisoner, under Lewis, to show that defendants "hindered the prisoner's efforts to pursue a nonfrivolous claim").

Even when the underlying case is not frivolous, the nature of its adverse disposition can be relevant to the Lewis standing inquiry. Where, for example, the underlying case was adversely decided on the basis of a deficiency logically and

---

[5] The requirements recognized in Lewis relate to the threshold determination whether the plaintiff has standing to assert a right-of-access claim. See Lewis, 518 U.S. at 349; Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996). Satisfying such requirements obviously does not resolve the claim in favor of the plaintiff. In order to prevail on a § 1983 right of access claim and substantiate more than nominal damages, a plaintiff may have to engage the merits of the underlying case.

-10-

practically unrelated to the impediment created by the right-of-access defendants, courts have held that the plaintiff has suffered no actual injury associated with their constitutional misconduct. See, e.g. , Deleon v. Doe , 361 F.3d 93, 94 (2d Cir. 2004) (holding plaintiff had not shown actual injury resulting from delay caused by interference with mail where prior case was not dismissed for his untimely submission of materials but on the merits after consideration of those materials). Here, however, the prejudice from the interference with plaintiff's legal mail is directly and inextricably tied to the adverse disposition of his underlying case and the loss of his right to appeal from that disposition. Moreover, there is no indication that any court ever considered that case frivolous, and the summary judgment order entered therein does not provide us with a sufficient basis for deeming it frivolous at this point.

We therefore hold that a dismissal of the present action for lack of standing under Lewis cannot be supported.

## IV

For the reasons discussed above, we conclude that Plaintiff has standing to assert a claim for violation of his right of access to the courts, and that defendants are not entitled to qualified immunity on the arguments currently advanced and evidence currently of record. Accordingly, we **REVERSE** the district court and **REMAND** for further proceedings consistent with this opinion. Appellant's

-11-

"Motion for Court Order" directing appellees to dismiss the attorney general's office and hire private counsel is **DENIED**. We remind appellant that he must continue making partial filing fee payments in accord with 28 U.S.C. § 1915(b).