**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

STEVIE ARTHUR MILLS,

      Plaintiff - Appellant,

v.

MAJOR CONNORS, in her official and
individual capacities, as a Denver Deputy
Sheriff; SGT. SHANNON, in his official
and individual capacities as a Denver
Deputy Sheriff; DEPUTY ESPINOSA, in
his official and individual capacities as a
Denver Deputy Sheriff,

      Defendants - Appellees.

No. 07-1524
(D. Ct. No. 1:07-cv-00203-WDM-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **EBEL**, and **LUCERO**, Circuit Judges.

Plaintiff-Appellant Stevie (Arthur) Mills filed this claim under 42 U.S.C. § 1983

after state officials employed by the Denver Sheriff Department failed to escort him to a

courtroom in which he had been scheduled to appear. The district court entered summary

judgment in favor of the defendants. We have jurisdiction under 28 U.S.C. § 1291, and

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

we AFFIRM.

## I. BACKGROUND

At some point prior to the events at issue in this case, Mr. Mills was released on $10,000 bond on a Colorado criminal charge that carried the case number of 06-CR-4804. While he was out on bond, Mr. Mills was arrested for controlled substances offenses and was taken into custody at the Denver County Jail. While he was still in custody on the controlled substances offenses, he was scheduled to appear for a hearing in case number 06-CR-4804. In connection with that hearing, Mr. Mills received a mittimus to appear in Courtroom 16 at the Denver County Courthouse on November 13, 2006 at 8:30 a.m. The mittimus provided that the "Manager of Safety and Ex-Officio Sheriff of the City and County of Denver, or his duly authorized representative . . . [should] RELEASE DEFENDANT on this case only" and stated the time and place of the hearing. Mr. Mills's name appeared as "Mills, Stevie" on the mittimus.

On November 13, Deputy Sheriff Rachel Espinoza and Sergeant Byron Shannon were assigned to the Court Services Division of the Denver Sheriff Department. As such, they were responsible for transporting prisoners to and from the Denver County Jail and the Denver County Courthouse. That day, Mr. Mills was transported to the courthouse and placed in a holding tank. Once there, he told Deputy Sheriff Espinoza about his scheduled court appearance, showed her the mittimus, and informed her that he would forfeit his bond if he failed to appear at the hearing. She refused to transport him to Courtroom 16, however, and Mr. Mills demanded to speak with her supervisor. Mr. Mills

subsequently spoke with Sergeant Shannon and showed him the mittimus. Sergeant Shannon left and returned shortly later. He told Mr. Mills that "Natalie," the clerk in Courtroom 16, informed him that the judge in Courtroom 16, Judge Habas, did not want Mr. Mills there. Mr. Mills was then taken back to the Denver County Jail. Later, he learned that he had been charged with a "Failure to Appear" ("FTA") in case number 06-CR-4804 and that his $10,000 bond had been forfeited because he did not attend the November 13 hearing.

After submitting grievance forms to the Denver Sheriff Department, Mr. Mills filed this action against Deputy Sheriff Espinoza and Sergeant Shannon.[1] In it, he contends that the defendants violated his right to due process and denied him access to the courts.[2] The magistrate recommended that summary judgment should be granted for the defendants because they enjoy absolute quasi-judicial immunity. The district court agreed with the recommendation, and Mr. Mills appeals.[3]

## II. DISCUSSION

To prevail on his § 1983 claim, Mr. Mills must establish that "the defendants acted

---

[1]Mr. Mills also named Major Vicki Connors, the official who investigated his grievances, but he does not appeal the district court's dismissal of his claims against her.

[2]Mr. Mills also alleged a violation of his Sixth Amendment right to counsel, but the district court did not mention this claim and Mr. Mills does not press it on appeal.

[3]Mr. Mills appeared pro se throughout the district court proceedings. After he filed his notice of appeal and briefing had been completed for the appeal, we determined that counsel should be appointed to assist him. His counsel has since submitted appellate briefs and also represented Mr. Mills at oral argument.

under color of state law and that the defendants' actions deprived [him] of some federal right." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). Not every injury at the hands of government officials, however, is actionable under § 1983. It is well-established that mere negligence cannot support § 1983 claims that are premised on the denial of due process or of access to the courts. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property"); *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (holding that "when access to courts is impeded by mere negligence, . . . no constitutional violation occurs"). Because it is apparent from Mr. Mills's complaint and the record before us that the defendants' conduct in this case was at most negligent, we affirm the order of summary judgment on that ground and do not reach the issue of absolute quasi-judicial immunity. *See Ross v. Neff*, 905 F.2d 1349, 1353 n.5 (10th Cir. 1990) (noting that we may affirm the district court for any reason supported by the record, even when the issue is not briefed on appeal).[4]

---

[4]We note that there appear to be additional obstacles to Mr. Mills's claims. For one, to the extent that Mr. Mills seeks to have the FTA expunged from his record and his bond payment returned to him, it is undisputed that the defendants are powerless to provide this remedy. We also suggest that Mr. Mills's reliance on *Bounds v. Smith*, 430 U.S. 817 (1977) in support of his claim that he was denied access to the courts is misplaced. Although Mr. Mills correctly states that "[i]nmates have a fundamental constitutional right of access to the courts that is guaranteed by the Fourteenth Amendment to the United States Constitution," *Bounds* and its progeny define that right in terms of providing inmates with a meaningful opportunity to pursue constitutional rights violations in court. *See Bounds*, 430 U.S. at 825 ("The inquiry is . . . whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably

Mr. Mills refers to himself as both "Stevie (Arthur) Mills" (for example, in this lawsuit) and "Arthur Stevie Mills" (for example, in the grievance forms he submitted to the Denver Sheriff Department). Those and other documents in the record also contain the signatures "Arthur S. Mills" and "Stevie A. Mills." Mr. Mills's booking number is 11513269; his "D.P.D." number is 0445060. It is undisputed—indeed, it is Mr. Mills's own theory of the case—that the defendants failed to escort Mr. Mills to the courtroom because he had been charged as "Stevie Mills" in case number 06-CR-4804 but as "Arthur Mills" in the controlled substance case for which he was then in custody. Accordingly, when Mr. Mills informed the defendants that he was scheduled to appear in Courtroom 16, they checked the courtroom docket but did not see the name "Arthur Mills"—the name on Mr. Mills's identification tag.

---

adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."); *Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.") (quotations omitted); *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) ("To state a claim for denial of such a right, [the inmate] must show that any denial or delay of access to the court prejudiced him *in pursuing litigation*.") (emphasis added) (quotations omitted). They emphasize the importance of ensuring inmates have reasonable access to legal materials and legal assistance in order to vindicate those rights. *See Lewis*, 518 U.S. at 351; *Simkins*, 406 F.3d at 1242. In contrast to those cases, when the defendants here allegedly denied Mr. Mills his "right" of "access," Mr. Mills was not pursuing claims against the state—rather, the state was pursuing them against him. Moreover, it is difficult to perceive how Mr. Mills was denied access to the courts—however that right is defined—when it is clear from the record that his November 13 hearing was rescheduled and Mr. Mills both attended that hearing and (in his words) "persistently asked Judge Habas about the Failure to Appear that she erroneously placed on his record." Indeed, the record shows that Mr. Mills was afforded at least two opportunities to address his grievance with the court.

- 5 -

Indeed, Mr. Mills has moved to supplement the record with a transcript of a November 27, 2006 hearing in which Judge Habas explains the reason why Mr. Mills was charged with an FTA. After considering Mr. Mills's position, the judge states:

> So what I'm telling you is, is that you're going to need to be patient because there was obviously some sort of mixup. I'm looking at this and I'm suggesting to you that the reason for the mixup is that you were being held under the name of Arthur Mills instead of Stevie Mills.

One month later, Mr. Mills's counsel in his criminal cases appeared in court and explained that the FTA was the result of "confusion about his name":

> And Your Honor, I believe that Judge Habas did indicate that she realized that Mr. Mills was in custody at that time and that he wasn't brought down. And I think the reason he wasn't brought down was there was some confusion about his name. In one case he's Arthur Mills and in another case he's Stevie Mills, so when it came up as Stevie Mills, I'm sure the sheriff's department felt that he—that this wasn't the man because this guy's name is Arthur Mills. So I think that was where the confusion came in.

Mr. Mills's complaint, filed a month after that hearing, also suggests that the defendants made a mistake and specifically notes that Deputy Espinoza was "negligent" and that defendants demonstrated a "collective lack of prudence." Mr. Mills goes even further in his objections to the magistrate's recommendation, specifically arguing that the defendants should have looked at his D.P.D. number rather than relying exclusively on the name "Arthur Mills" on his identification tag:

> The reason Deputy Espinoza did not see my name on Docket is because she was looking for Arthur Mills Book # (11513269) D.P.D. 0445060. So in short she erred in looking for Arthur Mills, off my I.D. when Stevie Mills was on my mittimus and on the Court Docket but both have same D.P.D. # 0445060.

. . . .

Next.  Sgt. Shannon must have checked for Arthur Mills's name on I.D. and used my I.D. booking No. (1513269) to see if I was on Court Docket same as Deputy Espinoza had.  Which turned out to be an error, because there was no Court date under that name or I.D. #.  But, as you can see under Stevie Mills D.P.D. No. 0445060 that was on my mittimus and I.D. was on the court docket.  Both deputies failed to use mittimus name or D.P.D. No.

So if Sgt. Shannon told Division 16 Clerk, Natalie, the wrong information asking her if Arthur Mills booking No. (1513269) had court in courtroom 16, then that was why she told him not to bring Plaintiff to Court.  Because I was not on the Docket under that name, but I was on the Docket under Stevie Mills which was on my mittimus DPD No. 0445060.

These allegations, not contradicted by any record evidence, support the conclusion that the defendants were at most negligent in failing to cross-reference Mr. Mills's name and D.P.D. number when examining the docket for Courtroom 16.  Indeed, Mr. Mills himself complains that Deputy Espinoza was "negligent" and that both defendants were not "prudent."  Because negligent conduct is insufficient to support a claim for the deprivation of a protected interest or the denial of access to the courts, Mr. Mills's § 1983 claims were properly dismissed.

### III. CONCLUSION

The order of the district court is AFFIRMED.  We GRANT Mr. Mills's motion to supplement the record.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge