FILED
United States Court of Appeals
Tenth Circuit

July 27, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DUSTIN J. MERRYFIELD,

        Plaintiff-Appellant,

v.

DON JORDAN, Secretary, Kansas
Social and Rehabilitation Services;
LINDA KIDD, Unit Leader; CORY
TURNER, Administrative Program
Director; MARILYN PEREZ,
Therapist; LEO HERMAN,
Administrative Program Director,

        Defendants-Appellees.

No. 11-3054
(D.C. No. 5:09-CV-03259-JAR-KGS)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES** and **ANDERSON**, Circuit Judges, **BRORBY**, Senior Circuit
Judge.

---

Plaintiff-appellant Dustin J. Merryfield is confined at Larned State Hospital

(LSH) in Larned, Kansas, under the Kansas Sexually Violent Predator Act, as a

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

resident of the Kansas Sexual Predator Treatment Program (SPTP). He brought this pro se suit in federal district court against defendants under 42 U.S.C. § 1983, alleging they violated his (1) First Amendment right to send mail and access the courts, (2) his Fourteenth Amendment right to due process, and (3) his First Amendment right to present grievances. Plaintiff sued defendants in their official capacities, seeking only declaratory and prospective injunctive relief.[1] Plaintiff alleged that he missed an appeal deadline in a state court case because of a delay in delivery of his mail caused by LSH, that he is not provided due process before discipline is enforced following a "write up," and that the institution's grievance procedure is constitutionally inadequate.

Defendants moved to dismiss Mr. Merryfield's complaint, and the district court dismissed on the ground that the complaint failed to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). Mr. Merryfield appeals this dismissal. Our jurisdiction is under 28 U.S.C. § 1291, and we affirm the dismissal for the reasons set forth below.

---

[1]     Except for Mr. Jordan, defendants are state employees involved with Mr. Merryfield's treatment.

I.

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Gee*, 627 F.3d at 1184 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

II.

Mr. Merryfield's first argument concerns the grant to different defendants of two extensions of time by the district court clerk. Under local Rule 77.2(a), the district court clerk's office is authorized to grant certain "orders and judgments without direction by the court[,]" including an order allowing one fourteen-day extension of time. Defendants Jordan, Kidd, and Turner obtained one of these extensions on June 29, 2010, *see* Aplt. App. at 86, and defendant Herman obtained

one on August 16, 2010, *see id*. at 161.  In obtaining the extensions, the defendants followed the procedures set forth in Rule 77.2(b).

Following each extension, Mr. Merryfield filed a motion asking the court to review the grant of the extension and arguing that the defendants had failed to show they had first consulted with him, why the extension was necessary, and whether any previous extensions had been granted, as required when seeking an extension of time under local Rule 6.1.  The court did not address Mr. Merryfield's first motion but denied the second, holding that local Rule 6.1 concerned judicial issues the clerk was not empowered to reach.  The court held that if the drafters had intended to require parties seeking a clerk's extension to follow the procedures set forth in *both* Rule 6.1 and Rule 77.2, they would have made that requirement clear.  Aplt. App. at 215-16.  As support, the court pointed out that Rule 77.2's drafters *had* "expressly incorporate[d] the requirements of other procedural rules." *Id.* at 216.

Mr. Merryfield argues that the extensions were not properly granted because defendants failed to follow Rule 6.1, and that the district court therefore lacked jurisdiction to hear defendants' two motions to dismiss.  He directs our attention to the unpublished district court case of *Clelland v. Glines*, No. 02-223-KHV, 2003 WL 221798 (D. Kan. Jan. 29, 2003) (unpublished), arguing that the district court in that case held that Fed. R. Civ. P. 6(a) is applicable to clerk's extensions.  But Fed. R. Civ. P. 6(a) is the general district court procedural rule for computing

-4-

time, and *Clelland* is therefore not relevant to the question at hand, which is whether defendants were required to follow the procedures in local Rule 6.1 when obtaining the clerk's extensions. We agree with the district court that they did not have to do so. Such a requirement would undermine the entire purpose of local Rule 77.2(a)(2), which authorizes the clerk to allow one extension of time without court involvement.

### III.

In his second point on appeal, Mr. Merryfield challenges the dismissal of his claim that his right to access the courts was violated by defendants' interference with his outgoing mail. Mr. Merryfield asserted that the Kansas Court of Appeals dismissed an appeal of his as untimely, despite that fact that he had submitted it to LSH officials for mailing six days prior to the filing deadline.

The district court first noted that Mr. Merryfield's claims were brought against defendants in their *official* capacity and were thus essentially claims against the State of Kansas. The court noted that such claims were generally barred by Eleventh Amendment, but that under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), an individual seeking only prospective injunctive relief for ongoing violations of federal law may bring suit against state officials in federal court. Mr. Merryfield asserted in the district court that he was seeking prospective injunctive relief. The district court held that Mr. Merryfield's court-access claim alleged only a single instance of inadvertently mishandled or delayed outgoing

mail and not "a deliberate or intentional impediment resulting in an ongoing violation of his right to access." Aplt. App. at 252 (*citing Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005)). It thus dismissed the claim for failing to allege an ongoing violation of his right of access.

In order to succeed on a denial-of-access claim, "a prisoner must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee*, 627 F.3d at 1191. Mr. Merryfield first argues on appeal that "[t]he Plaintiff's right to access the court does not require him to suffer multiple injuries in order to have a viable claim." Aplt. Br. at 6. He directs our attention to *Simkins v. Bruce*, *supra*, arguing that it presents an analogous instance of prison employees improperly holding an inmate's mail. But the inmate in *Simkins* did not sue the prison employees in their official capacities. Because Mr. Merryfield is suing the defendants in their official capacities and is seeking *prospective* injunctive relief, he must allege that there is an *ongoing* violation of his rights. "In determining whether the doctrine of *Young* avoids an Eleventh Amendment bar [to suit against state officers sued in their official capacities], a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (internal brackets

-6-

omitted) (*quoting Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 296 (1997) (plurality) (O'Connor, J., concurring in part)); *see also Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1232 (10th Cir. 2010) (quoting *Verizon*).

Mr. Merryfield also briefly argues that he asserted an ongoing violation of his rights in his complaint because he asserted that "[t]his same system causes harm to the Plaintiff in other cases due to the fact he has to wait until the Unit Leader can fit it into her schedule to get his mail mailed out." Aplt. App. at 10. But this conclusory allegation is insufficient to state a claim. LHS's mail system clearly does not prevent the timely filing of legal mail in all cases. After all, Mr. Merryfield's complaint sets forth forty-five separate federal and civil actions that he has pursued since October 2007. And Mr. Merryfield's allegations shed no light on why, in certain instances, his mail is delayed to the point that his filings are untimely. There is no allegation that the unusual delays were caused by anything other than negligence, which does not rise to the level of a constitutional violation. *See Simkins*, 406 F.3d at 1242 (holding that "plaintiff's claim that a right of access to the courts has been impeded requires him to allege intentional conduct interfering with his legal mail" and that "when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs."). Further, the only harm that he has asserted was caused by these other unspecified delays is that "he has been warned" by the courts and defendants in those unspecified cases. *Id.* Even if we assume for the

sake of argument that he has been "warned" because of late filings that occurred due to intentional conduct on the part of LSH, he does not allege that these warnings caused him any actual prejudice; nor does he assert that the cases in which these warnings occurred concerned his conditions of confinement, or show that any of the claims involved were not frivolous.

IV.

Mr. Merryfield's next allegation on appeal is that the district court erred in holding that defendants did not violate his constitutional rights by failing to give him due process before imposing adverse consequences in response to a "write up" he received in June 2008. Aplt. App. at 9, 11. Mr. Merryfield does not contest the district court's conclusion that his claim asserted that

> defendants violated his due process rights for any punishment other than a security level drop; defendants failed to follow [LSH's internal grievance procedure], he was denied the right to confront and cross-examine any witnesses against him, and to present favorable evidence and witnesses; he was denied legal counsel; and he did not receive advance notice of the hearing date.

Aplt. App. at 253. The district court ruled that: (1) "for the most part," Mr. Merryfield's claims were too conclusory to state a federal due process violation; (2) his complaint failed to allege facts demonstrating that he has a liberty interest in being at a particular phase level of the treatment program; (3) his complaint failed to "identify any fundamental rights that were affected by the reduction in [his] security level." Aplt. App. at 253-54.

-8-

On appeal, Mr. Merryfield first cites to a number of opinions from the Ninth Circuit and federal district courts in California holding, generally, that if a civilly committed person is confined in conditions identical to, similar to, or more restrictive than his criminal counterparts, that treatment is presumptively punitive. Mr. Merryfield then directs our attention to an unpublished decision from the Kansas Court of Appeals in which he was a party, *see Merryfield v. Turner*, No. 100,059, 2008 WL 4239118 (Kan. App. Sept. 12, 2008) (per curiam) (unpublished), and argues that the court there held that he is entitled to the same due process procedures with regard to a disciplinary write-up as his criminal counterparts.

In that case, Mr. Merryfield raised substantially the same argument as he has raised here:

> Merryfield argues as an SPTP resident he is entitled to the same procedural safeguards that prison inmates are entitled to receive, including advance written notice of any charges, a hearing before an impartial person, the right to be present at the hearing, the ability to present evidence at the hearing, the right to testify on his own behalf, the right to call witnesses, the ability to confront and cross-examine witnesses, assistance of counsel in certain situations or staff assistance pursuant to K.A.R. 44–13–408, and review by a court of law.

*Id*. at \*5. The Kansas Court of Appeals examined the due process rights afforded an inmate in Kansas when a disciplinary action implicated a liberty interest. It then held that the safeguards set forth in the SPTP handbook complied with those

due process rights. *Id*. But the court *did not* rule that Mr. Merryfield is constitutionally entitled to those same due process proceedings. *See id*.

Moreover, the liberty interest at stake for the prisoners in the disciplinary due process cases cited by the Kansas appellate court, was the loss of good time credit. *See Hogue v. Bruce*, 113 P.3d 234, 237-38 (Kan. 2005); *Dawson v. Bruce*, 138 P.3d 1234, 1236 (Kan. App. 2006). Kansas has held that the loss of good-time credits already earned constitutes the deprivation of a liberty interest because the State of Kansas has created a statutory right to those credits. *See In re Pierpoint*, 24 P.3d 128, 133-35 (Kan. 2001). Mr. Merryfield's complaint failed to allege any facts showing the deprivation of a similar liberty interest.

He attempts to remedy this failure on appeal by asserting that (1) he was told by officials at the SPTP that "the only manner in which he would be able to regain his freedom is by earning and maintaining certain levels within the [SPTP]," Aplt. Br. at 13; (2) that the incident for which he received the "write up" in this case occurred in the "Intensive Treatment Unit (ITU)" where, evidently in spite of the name, he allegedly receives no sexual predator treatment,[2] *id*. at 14;

---

[2] The unpublished opinion from the Kansas Court of Appeals to which Mr. Merryfield directed our attention, and that we discussed above, also addresses a previous claim by Mr. Merryfield regarding the ITU. *See Merryfield v. Turner*, No. 100,059, 2008 WL 4239118 (Kan. App. Sept. 12, 2008) (per curiam) (unpublished). In that matter, he complained in state court of being placed in the ITU—only he complained that the placement constituted "forced treatment" in violation of his First Amendment rights. *Id*. at *2. The court in that matter
(continued...)

-10-

(3) that the incident resulted in a drop in his ITU therapy level; and (4) that this

ITU "step" drop will keep him in the ITU for a longer period of time, consequently

keeping him from earning higher levels in the SPTP, and therefore keeping him

civilly committed for a longer period of time. He therefore claims that he has a

liberty interest in exiting the ITU as quickly as possible and that, therefore, he was

entitled to the same due process rights afforded an inmate in Kansas when a

disciplinary action against the inmate implicates a liberty interest.[3]

---

[2](...continued)
quoted the section on the ITU from the "Resident Handbook" for participants in
the SPTP, as follows:

> ITU is intended as an opportunity for residents to prepare themselves
> and their emotions & thought processes, in order to be successful
> when returned to the regular program. ITU will focus on issues such
> as stress tolerance, self-regulation (especially emotional regulation
> and decision-making, such as coping with anger), a heightened level
> of awareness (sometimes called mindfulness), greater effectiveness
> in your dealings with others (residents, staff and significant persons
> in you[r] life), and individual issues identified by you and your
> treatment providers. Much of the treatment you receive here will be
> guided by principles of an approach called Dialectical Behavior
> Therapy, or DBT.

*Id*. (quotation marks omitted).

[3] Mr. Merryfield does not argue in this case that the treatment provided by
the SPTP, including the ITU portion of that program, is constitutionally
inadequate. *See Merryfield v. Kansas*, 241 P.3d 573, 577 (Kan. App. 2010)
(wherein Mr. Merryfield did make such an argument). His complaint asserted
only that he had been placed on "24 hours restriction and a reduction to security
level 0[,]" Aplt. App. at 11, and included no allegations describing his sexual
predator treatment generally, his treatment in ITU, or the differences between the
various treatment levels.

-11-

None of these facts were alleged in his complaint. "Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal." *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1143 (10th Cir. 2009). Generally, we deem such arguments to be waived. *See, e.g.*, *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011). Although Mr. Merryfield was appearing pro se in the district court, this did not relieve him of the "burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). We held in *Hall* that while "the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint," "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.*

Mr. Merryfield does not contend that this argument—based upon newly asserted facts—was omitted from his district court papers through inadvertence or neglect. That is, he does not contend that the argument should be deemed only forfeited and not waived. *See Richison*, 634 F.3d 1123, 1127–28 ("If the theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it. By contrast, if the theory simply wasn't raised before the district court, we usually hold it forfeited." (citations omitted)). Nor does he assert that we should review this argument for plain error. And "the failure to argue for plain error and its application on appeal[ ]surely marks the end

-12-

of the road for an argument for reversal not first presented to the district court."

*Richison*, 634 F.3d at 1131. Accordingly, we decline to consider this late-blooming argument.

V.

Mr. Merryfield's final argument on appeal is that the district court erred in dismissing his claim that the grievance system at LSH is constitutionally inadequate and violates his First Amendment rights. The district court concluded that Mr. Merryfield "ha[d] identified no federal constitutional right to an institutional grievance procedure and fail[ed] to allege how injunctive relief as against any named defendant would afford him a proper remedy for some claimed violation." Aplt. App. at 255. The court held:

> Plaintiff is alleging statutory not constitutional violations. Plaintiff has not alleged how any failure in the grievance procedure has resulted in an actual violation of his constitutional rights. Even taken as true, plaintiff's allegations do not state a deprivation of federal law, as there is no federal constitutional right to an institutional grievance procedure.

*Id*.

The district court is correct. Mr. Merryfield's complaint cites to a number of federal cases that concern the general proposition that exhaustion of administrative remedies prior to filing a federal lawsuit is not required where the administrative remedies are futile or fail to provide adequate relief. He then asserts that he has extrapolated from those cases a number of characteristics that a

grievance system is required to have and then proceeds to examine those characteristics and assert that LSH's grievance system does not have them. But there is no explanation as to how these cases amount to a constitutional right to have certain grievance procedures implemented. Moreover, there is no indication that a failure to exhaust has played any role in the present case. Thus, Mr. Merryfield does not aver facts that tend to establish a plausible claim for relief.

Mr. Merryfield next asks this court to hold that he showed a violation of his due process rights because he had a liberty interest in defendants following Kansas state law. He argues that "the state laws in question limit [defendants'] discretion concerning grievances and outlines a specific method and system that must be provided. Thus, the state laws presented grant the Plaintiff a liberty interest, which is protected by the United States Constitution and is a viable claim under 42 U.S.C. § 1983." Aplt. Br. at 12.

This argument was not raised below. In his complaint, Mr. Merryfield set forth a number of criteria that he asserted a constitutionally adequate grievance system must have, and then asserted "that the criteria set forth above [are] not available in the administrative relief/grievance system provided and made available to the Plaintiff." Aplt. App. at 19. He did not argue that he had a due process right to have certain state laws followed. Again, "[a]bsent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."

*Turner*, 563 F.3d at 1143. And Mr. Merryfield has not asked us to review the argument for plain error. Consequently, we decline to consider it. *See Richison*, 634 F.3d at 1131.

VI.

For the foregoing reasons, the district court's judgment dismissing Mr. Merryfield's complaint under Federal Rule of Civil Procedure 12(b)(6) is AFFIRMED.

Entered for the Court

Jerome A. Holmes
Circuit Judge